JOSHUA C. SANDERS

*v.*

WALTER L. PECK *et al.*

*Filed at Mt. Vernon October 31, 1889.*

1. PRACTICE—*after reversal and remandment—proceedings in the trial court.* Where this court decides the rights of the several parties upon the merits, and reverses the decree below, and remands the cause for proceedings therein in conformity with the opinion rendered, there is nothing for the trial court to do but to carry into complete effect the decision of this court.

2. Where a person seeks a particular specific relief by his cross-bill, and finally succeeds by having his right established, he will not have the right, on the remanding of the cause, to have other or a different form of relief from that sought, and allowed him by this court. If he desired to seek for different relief, he should have applied to this court by petition for a rehearing, and suggested the change he desired, so that this court might have given different directions.

3. A judgment of this court upon a decree rendered in an inferior court is *res judicata* upon all matters in controversy, except the specific points upon which a reversal or modification is ordered.

4. So when this court, on appeal or error, finds the rights and duties of the several parties, and reverses the decree and remands the cause, with direction to proceed in conformity with the opinion filed, the judgment of reversal will be *res judicata* as to all the matters passed upon or involved in the case, and concludes all parties from questioning the propriety and correctness thereof.

5. TENDER—*must be kept good.* Where a party's right to have certain real estate purchased by him released from a deed of trust, depends upon his surrender of bonds secured by the trust deed, at schedule prices, to the trustee, and the party makes a tender of the bonds before the filing of his cross-bill to have a release of the trust deed, which is refused, he must keep the tender good, which can be done only by the delivery of the bonds so tendered, with all the coupons thereon.

6. If the party, after the tender of the bonds, fails to keep the tender good, by having them where he can deliver them in a reasonable time, the tender will not avail him. If, by pledging or delivering the bonds to his solicitors, and their refusal to let him have them, he is unable to deliver them in the time fixed by the court, his tender and rights under it must fail.

7. TAXES—*who may pay them—lienholder.* The holder of bonds secured by deed of trust will have the right to pay the taxes on the land to protect his security, and he will have the right to have the other bondholders thereby benefited, contribute to such payment.

8. BILL TO REDEEM—*refunding taxes paid by another—contribution.* Where a party, by his cross-bill, seeks to redeem certain lots from a deed of trust, he will be required to pay his proportion of the taxes on the property which has been paid by another party interested, to protect the property and the lien thereon. This will be required without any formal pleading by the original complainants.

9. SAME—*time to perform.* In case of a bill to redeem from a mortgage or trust deed, it is usual, after finding the sum the complainant is to pay, to require him to pay it in ninety days, and when such sum is quite inconsiderable in proportion to the value of the property, and no

hardship is shown, there will be no error in fixing the time at ninety days, especially when the action of others depends upon his performance.

10. COSTS—*conditional—on bill to redeem.* A decree on a bill to redeem certain lots from a deed of trust, awarded the relief sought, on condition that complainant should pay or perform what was required of him within ninety days, and also his costs on the same condition. On his failure to make the payment necessary to the redemption, the bill was to stand dismissed : *Held,* that the decree was not erroneous as to the costs.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. D. T. CORBIN, for the appellant.

Messrs. PAGE & BOOTH, for the appellees.

Mr. J. L. HIGH, and Mr. D. S. WEGG, for the Chicago and Great Western Railroad Company.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This case was before us at a former term, and is reported in 112 Ill. 408, under the title of *Chicago and Great Western Railroad Land Co. et al.* v. *Walter L. Peck et al.* The cause, if such a combination of controversies may properly thus be designated, consisted of four original bills and eight cross-bills, which, by agreement of all parties, had been heard together. The then decree was in part affirmed, and in part reversed for the errors indicated in the opinion at that time filed, and the cause remanded for further proceedings in conformity with such opinion. The numerous questions, both of law and of fact, then involved in the litigation, are very fully stated in the report of the case above mentioned.

Upon the remanding of the cause to the circuit court, certain proceedings were had therein, and a decree was entered, which appellees insist is in conformity with the decision of this

court upon the former appeal. With this latter decree, which is now before us, all the parties to the many and complicated controversies in question seem to be content, except Joshua C. Sanders, the now appellant. Sanders was a defendant to the original bill filed by Peck and his associates to foreclose the Jewett trust deed, and he answered the same. He also filed a cross-bill, in which he set forth that he had purchased, in good faith, about 195 bonds of the Chicago and Great Western Railroad Company, and that he had also purchased about 300 lots of land at Riverside, from the Chicago and Great Western Railroad Land Company, and that he did so having in mind the provision of the trust deed of said land company to John N. Jewett, which provided for a release therefrom of lots in exchange for said bonds, and intending to get the lots released by the surrender of said bonds; that in accordance with the provisions of said trust deed he had duly tendered said bonds to John N. Jewett, and requested him to execute a release, discharging said lots from the lien thereof; that Jewett, trustee, had refused to receive said bonds and execute said release. He claimed that he was entitled to have from Jewett a release and discharge of the said lots upon surrender of his said bonds, and that a foreclosure of said trust deed, as prayed for in the original bill of Peck and others, so far as his lots were concerned, would result in manifest injustice to him, and he prayed that Jewett, upon surrender of his said bonds, be decreed to release and discharge his said lots from the lien of the said trust deed.

The original decree in the cause found that the deeds of the land company to Sanders, for the 301 lots, were procured by fraud, and set them aside, and dismissed the cross-bill, with costs. But in *Land Co.* v. *Peck, supra,* this court held that there was no sufficient evidence that the deeds to Sanders were obtained by fraud, and that Sanders, as the holder of bonds to the amount of the schedule prices of his lots, which he had tendered to Jewett, was, by the plain terms of the deed of trust,

entitled to the release which he demanded, and that the relief he asked should have been granted to him upon the surrender of his bonds.

The substance of the present decree upon the cross-bill of Sanders is, that Jewett, trustee, upon delivery to him by Sanders of the 195 bonds and all the coupons thereto belonging on the first day of June, 1874, (the date of the tender of the bonds to Jewett,) and upon the refunding by Sanders, to Peck and associates, of $2212.01 paid by them on 53 of the 301 lots for taxes and assessments, with interest, within ninety days from the entry of the decree, cancel the 195 bonds, and execute to Sanders a release of the 301 lots from the lien of the trust deed, and in case of the refusal of Jewett so to do, that the master in chancery, as special commissioner, should receive and cancel the bonds, and execute such release, and that in case Sanders failed to surrender the bonds and coupons, and refund the taxes upon the 53 lots, within ninety days, then his right to a release should cease and determine and his cross-bill be dismissed. Upon the former hearing in this court it was also held that the releases of the six Page and Kimbark trust deeds, and of the Henry Greenebaum trust deed, were invalid, and said releases were set aside, and all of said trust deeds were held to be prior liens to the Jewett trust deed; and therefore, by the present decree, 190 of the Sanders lots, of the schedule value of $120,000, are ordered to be sold to satisfy these restored incumbrances.

Sanders appealed from the last decree of the circuit court to the Appellate Court, and that court reversed so much of the decree as directs, that upon the delivery to Jewett, trustee, by Sanders, of the 195 bonds which he tendered to Jewett, then the 301 lots in Riverside should be released from the lien of the Jewett trust deed, and affirmed the decree in all other respects, and remanded the cause, with directions to decree that upon said Sanders, within ninety days, surrendering to Jewett, or the master, bonds, with coupons, to the amount of the sched-

ule price of such of the 301 lots as he, said Sanders, shall, at the time of making such surrender, designate or specify, then said Jewett,—or, in case he refuses, the master,—shall receive said bonds, with coupons, so surrendered, and cancel the same, and release to the said Sanders, upon his also paying $2212.01 taxes, and interest thereon, the lots which may by him be designated or selected from said 301 lots; and in case said Sanders failed to select lots and surrender bonds therefor, and refund said taxes, within ninety days from the entry of such decree, then that his cross-bill should be dismissed. The cause is now brought again to this court by the further appeal of Sanders, and the assignments of error and of cross-error are quite numerous, but the material questions at issue seem to be as follows:

First, should Sanders be permitted to redeem from the lien and operation of the Jewett trust deed, such, only, of his 301 lots as he now chooses to redeem; second, was it error to require appellant to refund the taxes which Peck and his associates paid on the 53 lots which appellant gets under the decree; third, was it error to require appellant to surrender the accrued interest coupons, along with the bonds to which they belong, without crediting him with the amounts due upon such coupons in making up the schedule prices of the 301 lots; fourth, was it error to refuse appellant permission to either file a supplemental cross-bill, or amend his original cross-bill in the particulars specified in the request; fifth, was it error to require appellant to surrender the 195 bonds and the coupons, and refund the $2212.01 taxes paid, and interest, within ninety days from the entry of the decree; sixth, was it error to enter the decree with reference to the facts, and rights of parties, existing June 30, 1877, and refuse to hear evidence to show that the Chicago and Great Western Railroad Company is now possessed of a large amount of property which is covered by its trust deed to the Farmers' Loan and Trust Company, which was given to secure the bonds which were also

secured by the Jewett trust deed; seventh, was the decree, "that the principal of said bonds is hereby declared to be due," erroneous; eighth, was it error to refuse to set aside the deficiency decree; ninth, was the decree for costs erroneous.

The complaint of appellant's cross-bill was, that he bought the 195 bonds of $1000 each, and the equity of redemption in the 301 lots, in view of the provisions and terms of the Jewett trust deed, and intending to get the lots released therefrom; that he accordingly tendered, in 1874, to the trustee, bonds amounting to the schedule prices of his lots, and exhibited his deeds, and demanded the release of said lots according to the terms of the trust deed, and the trustee refused to release the same. He claimed his rights as above stated, and offered to bring the bonds into court, and surrender them on delivery to him of a release of said lots from said trust deed. While there was a general prayer for other and different relief, yet his specific and special prayer was for a decree "that Jewett release his 300 lots, and if he do not, that the master may execute such release with like effect." Appellant was denied relief in the circuit and Appellate courts, and thereupon brought the record to this court, and urged, by his assignments of error, that the courts below "erred in decreeing the Jewett trust deed to be a lien on the lots and lands conveyed by the land company to him, and in dismissing his cross-bill, and in not decreeing to him the relief prayed for therein." We thereupon found the fact to be, that appellant had made a tender to the trustee, of bonds which he owned, to the amount of the schedule prices of his lots, and had demanded a release of his lots, which was refused, and decided that he, as the holder of bonds to the amount of the schedule prices of his lots which he tendered, by the plain terms of the deed of trust, was entitled to the release which he demanded. We, at that time, concluded our consideration of this particular branch of the consolidated case with the remark: "We are of opinion the relief asked by Sanders should have been granted to him upon

the surrender of his bonds." Upon that appeal, the decree in the foreclosure proceedings in which this cross-bill was filed, was in most respects affirmed, but it "was modified in certain particulars." (See *City of Chicago* v. *Cameron*, 120 Ill. 453.) And for the purpose of carrying such modifications into effect, there was an order of reversal "for the errors indicated" in the opinion, and the cause was "remanded for further proceedings in conformity with the opinion."

In *Wadhams* v. *Gay*, 83 Ill. 250, there had been an order of reversal, and a mandate "that this cause be remanded to the Superior Court of Cook county, for further proceedings in conformity with the opinion of the court herein filed." It was there said : "Here is a peremptory order for such proceedings, and such, only, as shall be in conformity with the opinion filed. On the receipt of this mandate, it was the duty of the Superior Court to examine the opinion and conform its action to it. An examination of the opinion would have informed the court that the merits of the controversy had been fully considered ; that there had been a decision upon the merits, and a conclusion reached. * * * The court would have seen that every question raised and argued by the parties to the bill had been fully met and decided by the court. The whole merits were tried, discussed and decided. On the receipt of the mandate and opinion, the Superior Court was bound to carry into complete effect the decision of this court,—not to re-try the cause." This language of the court seems to be peculiarly applicable to the case now in hand. See, also, *Hough* v. *Harvey*, 84 Ill. 308 ; *Newberry* v. *Blatchford*, 106 id. 584 ; *Washburn & Moen Manf. Co.* v. *Chicago Galvanized Wire Fence Co.* 119 id. 30, and numerous other decisions of this court.

Counsel for appellant call our attention to *Chickering et al.* v. *Failes et al.* 29 Ill. 294, but we do not regard that decision as here in point. That case was first before the court in 26 Ill. 507, and the decree was in part affirmed and in part reversed. In the opinion reported in 26 Ill. the court said : "Had it

appeared that payment of taxes was continued after the death of Lee, by the persons holding the color of title inherited or devised to them by Lee, whether as trustees or in their own right, then it would have sufficed. The proof fails to show that fact." The reversal was as to that part of the lands affected by the tax title claim, and the cause was "remanded for further proceedings not inconsistent with the opinion." The trial court permitted an amended answer to be filed, setting out portions of the will of Lee and facts touching the payment of taxes. On the second appeal (29 Ill.) this action of the court was sustained, it being held that the directions were general, and that the directions given did not limit the power of the court below to act only upon the record of the case as it then existed, and it was admissible to allow the amendment and additional evidence. It is manifest that the proceedings had on the second hearing were not inconsistent with the views expressed in the opinion upon the first remandment. (See, also, comments upon the opinion in *Chickering* v. *Failes* made in *Wadhams* v. *Gay, supra*.) In the case at bar, as reported in 112 Ill., the whole merits and equities of the several controversies were examined and definitely decided, and the directions to the circuit court were specific,—"to proceed in conformity with the opinion,"—and upon examination of the opinion it clearly appeared what decree should be entered in respect to each and all of the matters which were submitted to this court.

It is a matter of public interest that there shall be an end to litigation. At the time this cause was heard in the circuit court, after the remandment, it had been pending in the courts some fourteen years, and it had already received patient hearing before three different tribunals. Appellant had obtained from the court of last resort all that he had so persistently asked, and all that his pleadings suggested.

It is urged, however, that when Sanders purchased his bonds, and the 301 lots at Riverside, the six trust deeds to Page and Kimbark, and the trust deed to Henry Greenebaum, had been

released of record, and apparently constituted no incumbrance upon any of the 301 lots, and that his tender to Jewett and offer to redeem were in view of these facts, and under the belief that by the surrender of his 195 bonds he could obtain a clear title to all the lots. It is unfortunate that appellant may not be able to realize all the benefits he expected to reap from his dealings in respect to these bonds and lots. But there are other persons, with equally meritorious claims, who have met with disappointment and loss in these Riverside transactions. Peck and his associates, for the purpose of relieving the property from embarrassment, advanced the money for $100,000, preferred, of the railroad bonds, and at the time fully believed, and were apparently justified in their assumption, that said 100 preferred bonds constituted a first lien upon all the Riverside property included in the Jewett trust deed; yet, by the restoration of the Page and Kimbark and Greenebaum trust deeds, a very large portion of their supposed security has been virtually wrested from their grasp, and by the establishment of the claim of appellant all the lots which he will receive are taken from the trust deed which secures their debt. They and other persons who acquired interests subsequent to the restored incumbrances were misled by the releases appearing of record. It would be inequitable and unjust to disregard the interests of all other creditors for the sake of saving appellant harmless. Both he and they must lie in the beds which they have, respectively, made for themselves.

It is true, the express provision of the Jewett trust deed was, that the trustee should, on receiving the schedule price of any lot or lots in cash, or notes secured by mortgage thereon, or in railroad bonds at par, numbered from 1 to 1000, both inclusive, release said lot or lots. But appellant elected to redeem the whole 301 lots to which he held the equity of redemption, instead of a less number of lots or a single lot. In fact, he purchased both bonds and lots for that express purpose and with that deliberate intention. He made his demand and

tender upon that theory of his rights and in furtherance of such intention, and his tender was made as an entirety. He based his cross-bill upon that theory, and therein prayed for that specific relief. He had full and ample notice and knowledge, many years before the first hearing of the cause, of the claims that both the release of the Page and Kimbark trust deeds and the release of the Greenebaum trust deed were fraudulent and void. In 1873 Page and Kimbark filed their bill to set aside the releases of the deeds in which they were trustees, and Hukill filed his cross-bill. Sanders and Page and Kimbark were defendants to Peck's bill to foreclose, and Page and Kimbark, in their answer to that bill, stated the whole history of the releases, and asked that they be declared void; and in June, 1875, they answered the cross-bill of Sanders, and referred therein to their answer to the Peck bill, and made the same their answer to the cross-bill. Gookins answered the Peck bill, and in February, 1876, filed his cross-bill, asking that the release of the Greenebaum trust deed be set aside and his lien thereunder reinstated. Numerous other bills and cross-bills were, from time to time, filed, containing similar notice of the claims made for the restoration of the several released incumbrances. In November, 1875, after full knowledge of these claims, appellant closed his pleadings by filing replications. The several causes were not heard until June and July, 1877. Appellant might, at any time during these years, or even at the hearing, have amended his cross-bill or its prayer by praying for relief in the alternative, conditional upon the allowance or refusal of the claims in respect to the Page and Kimbark and Greenebaum mortgages. But he elected not to do so, and persisted in his demand for 301 lots for 195 bonds. True, his cross-bill contained the next best prayer,—that for general relief,—and that was broad enough to cover any relief he was entitled to. He did not, however, seek at any time to avail himself of that prayer for obtaining relief such as he now insists upon, but persistently

27—131 Ill.

and tenaciously urged the granting of his special and specific prayer. He continued the same course when the cause was submitted to this court for final decision, and both by his assignments of error and his brief and argument asked only the benefit of his prayer for a release from the Jewett trust deed of his 301 lots for the 195 bonds. We gave him the full measure of that which he asked. Upon the announcement of our decision, he knew for certainty the validity of the Page and Kimbark and Greenebaum trust deeds was established,—that they were liens upon many of the lots prior to and better than his claim; and yet he made no move, by motion, or petition for rehearing, or otherwise, to have this court modify its decision so as to permit him to select only such lots as he desired to redeem, and surrender only bonds enough to make up the schedule prices of such lots. He was bound to know that if he omitted to ask a modification of the opinion filed, within the time limited for presenting a petition for rehearing, he. would not thereafter be heard to complain.

It is trifling with the courts and with the administration of justice to strenuously insist, for a long term of years, upon the recognition of a claimed legal right and upon a specific relief, and then, when the right is established and the desired relief is afforded, turn round and claim,—and that, too, after the matter has become *res judicata,*—that the decree of the court is inequitable and unjust, when that decree has simply awarded what was asked. It would seem, from the record, that for years appellant, after full notice of the rights alleged by those claiming under the restored trust deeds, speculated upon the probabilities of the decisions of the courts in respect to such deeds. It would further seem, that even after the final decision of this court he was content therewith, but that since other parties, who have likely been influenced in their conduct by what they regarded as the final decision of this court upon the various controversies involved in the litigation, have shaped their acts and business deals by what they understood or were

advised,—whether rightly or wrongly is here immaterial,— were the legal results of such decision, appellant has conceived it would be to his advantage to now obtain a modification of the relief granted him. We are unable to see that he occupies a position so peculiarly meritorious that it would call upon us to specially interpose in his behalf, to the detriment of others, even if we had the right and power so to do.

If there is any one matter which, by the decision in *Land Co. et al.* v. *Peck et al.*, became more than any other *res judicata*, it is that there was a right in Peck and his associates to foreclose the Jewett trust deed. The bonds it secured were not due by their terms. The only other way they could be made due was after the foreclosure of the railroad mortgage to the °Farmers' Loan and Trust Company. This railroad mortgage had not, in fact, been foreclosed.. This court expressly held the railroad company had no property to first exhaust, and therefore it was the same as an exhaustion of its property, since the law does not require a vain and useless thing. It was there said: "Under the above provision, then, in the Jewett trust deed, the bonds were to be taken as due and payable, and there was the present right of foreclosure. * * * The decree in favor of Peck *et al.*, in the Peck suit, was correct." This, most assuredly, is *res judicata*, so far as concerns the parties to the Peck suit, in respect to contentions predicated upon the original bill and cross-bills filed in that suit. It was, very clearly, not erroneous to refuse permission to appellant to either plead or prove in this suit that the Chicago and Great Western Railroad Company is now possessed of property of the value of $5,000,000 and upwards, which is covered by the railroad trust deed. The appellant, by the judgment in the suit rendered when the cause was remanded, is precluded from now raising that question in this suit.

That which we have above said answers with sufficient explicitness, and in the negative, what we have above designated

as the first, fourth and sixth questions raised by the assignments of error.

Was it error to impose upon appellant the burden of repaying to Peck *et al.* the taxes on the 53 lots not included in the restored incumbrances which the latter have advanced? By the terms of the trust deed it was the duty of the grantor therein (the land company) to pay the taxes, and Peck *et al.* were the holders of $100,000, preferred, of the $1,000,000 in bonds secured by it, and had the clear right to pay the taxes on the mortgaged land in order to preserve the title to the land and protect their security. (*Pratt* v. *Pratt et al.* 96 Ill. 184.) The lien of the trust deed on the lots in question continued, notwithstanding the tender to the trustee, for by the terms of that instrument it was the surrender and receipt of the bonds which gave the right to a release from such lien, and until an actual surrender the tender might be withdrawn by appellant; and the failure of the trustee to accept the tendered bonds did not work a divestiture of the lien given for the benefit of the *cestuis que trust.*

It is urged that there are no allegations in the pleadings of Peck *et al.* upon which a decree for refunding the taxes could be entered. The cross-bill of appellant is a bill to redeem from the trust deed, and it would be inequitable to allow the owner of the equity of redemption to redeem without paying the moneys advanced by the beneficiary in the trust for the purpose of paying the taxes which such owner should himself have paid, thereby preserving both the property and the lien. The decree for redemption is based on the cross-bill, and no pleadings on the part of Peck *et al.* were required in order to support such decree.

It is insisted by appellant, the interest coupons attached to the bonds to be surrendered, and which were over-due at the date of the decree, should have been computed, and credited to him in making up the schedule prices of the lots redeemed. It is as a purchaser of the lots from the land company that

appellant claims the right of redemption, and the right he demands is not the ordinary and usual right of redemption vested by law in the holder of an equity of redemption, but a special right, given by the provisions of the trust deed to the holders of bonds secured thereby. The land company was only authorized to sell so as to vest its vendee with the right to surrender bonds to the schedule price of the lot or lots bought, and thereby redeem and release such lot or lots from the lien of the trust deed, prior to the time default should be made by it in the performance of some of the covenants contained in the trust deed. Default was made by the land company in the performance of its covenants long before the filing of appellant's cross-bill, and appellant, at the time of such filing, had,—and at no time since has had,—the right to surrender bonds in release of any of his lots at schedule prices, without such right is based upon a tender of bonds to the trustee, made before he exhibited his cross-bill. The only tender claimed is that made in May or June, 1874. Appellant's present right is predicated solely upon that tender, and in order to avail himself of its benefits he must keep that tender good, and he can only do this by delivering up the bonds in the condition they were when he elected to take advantage of the privilege of redeeming given him by the trust deed, and made such right a vested right by a tender. His tender was of bonds, with certain interest coupons attached, and it is still requisite those coupons should be surrendered with the bonds.

Appellant claims it was erroneous to require of him to refund the $2212.01 of taxes paid, and interest thereon, and deliver up the bonds and coupons within ninety days from the entry of the decree. In cases of a bill to redeem from a mortgage or trust deed, the practice is to give the complainant a fixed day within which to pay the amount found due upon the incumbrance, and most usually ninety days is allowed for that purpose. The amount of the taxes here to be refunded is quite

inconsiderable, and there is nothing to indicate there would be any unusual hardship in compelling that amount to be raised and paid within the time ordinarily allowed for such purpose. In his cross-bill appellant alleged he "has always been ready and willing, and is now ready and willing, to surrender and deliver, and hereby offers to surrender and deliver, or to bring into court for surrender and delivery, all his said bonds." It is only on the basis of this averment of readiness, willingness and ability to make a present delivery of the bonds that he has any standing in court and is entitled to a release of his lots.

It would be unjust to require Peck *et al.*, who have been endeavoring for fourteen years or more to secure a sale of the mortgaged property for the payment of their debt, to now wait an unusual and unreasonable length of time before they can realize their moneys from a sale of the property, for the mere convenience and benefit of appellant. The ability of appellant to deliver the bonds is an essential element in the tender of which he claims the benefit. If his ability to surrender them within a reasonable time is lacking, then his tender necessarily fails. It is his misfortune if, owing to a controversy with his former solicitors in regard to their fees, he can not procure the bonds for delivery within a reasonable time without submitting to what he claims is an unjust demand. The fact of his being engaged in such controversy affords no sufficient justification for delaying Peck *et al.* in their foreclosure sale until his litigation with his former agents is ended, and it can not be known what lots will be for sale under the foreclosure decree until it is definitely determined by a surrender of the bonds, or a failure to surrender within a time fixed by the court, whether or not appellant will take advantage of the opportunity afforded him of releasing said lots from the lien of the trust deed. We are unable to say the order of the court in that behalf was erroneous.

Objection is made to that portion of the decree which says, "that the principal of said bonds is hereby declared to be due,

and the right of complainants in this suit to foreclose said trust deed, for payment of said sum due from the Chicago and Great Western Railroad Land Company, is complete." This same provision was contained in the decree which was before this court upon the first appeal, and it was then affirmed. The rule is, that a judgment of this court upon a decree rendered in an inferior court is *res judicata* upon all matters in controversy, except the specific points upon which we direct a reversal or modification of the original decree. (*Hough* v. *Harvey*, 84 Ill. 308; *Washburn & Moen Manf. Co.* v. *Chicago Galvanized Wire Fence Co.* 119 id. 30.)

Complaint is also made that the circuit court refused to set aside the deficiency decree entered in 1881. That decree was before this court on the former appeal, and this court then said in respect to it: "We find no error in the aforesaid order or decree of July 15, 1881, and it will be affirmed, and there was no error in the refusal to vacate it." After such express affirmance of the order by this court, the circuit court had no power or authority to set it aside, and its action in the premises was not error.

It is assigned as error "that the circuit court refused to decree costs to appellant, in accordance with the mandate of the Appellate Court; that, instead, it decreed that the said Sanders, upon the surrender of said 195 bonds, with all the coupons thereto belonging. on the first day of June, 1874, recover his costs herein, to be paid out of the proceeds of the sale to be made under this decree." The mandate mentioned is the order made in the Appellate Court, in April, 1886, reversing the prior decree and remanding the cause, and the costs therein ordered to be taxed are the costs of that court, to be collected on execution issuing out of said Appellate Court, and with which the circuit court had nothing whatever to do.

We have already remarked, the cross-bill of appellant is a bill to redeem, and the practice which obtains in regard to bills of that character is, that if the complainant therein does

not, within the time limited by the order of the court, comply with the decree by paying the amount found due in order to redeem, his bill is dismissed, and he is taxed with the costs. The provision here made is, that if he complies with the decree by delivering up the 195 bonds and the coupons, then he recovers his costs. His recovery of costs, then, is conditional, and the very act which would make such recovery of costs absolute, would cause him to lose all interest as a bondholder in the proceeds of the sale to be made under the foreclosure decree. In other words, if he does not redeem, the proceeds of sale will not be taxed with the costs in question; and if he does redeem, then that such costs are to be paid out of said proceeds is no concern of his. These costs were occasioned by the act of the trustee in refusing to allow the redemption, the claim being that the 195 bonds were fraudulently issued, and the deeds to appellant fraudulently obtained. The defense that was made to the cross-bill, though unsuccessful, was for the purpose of protecting the beneficiaries under the trust deed from what was supposed to be a fraudulent claim. Under the circumstances, there is equity in the order the costs of the unsuccessful contention should be paid out of the fund to be distributed among these beneficiaries. In no possible contingency, under the decree made, can any portion of these costs therein adjudged to be paid be taken out of what would be appellant's distributive share of the proceeds of the sale, in the event he should finally elect not to redeem his lots but to retain his bonds. We find no reversible error in the orders of the court in regard to costs.

The result of the conclusions we have reached in the case is, that the judgment of the Appellate Court is reversed, so far as it assumes to modify the decree of the circuit court, and the decree of the circuit court is in all things affirmed.

*Judgment reversed in part and in part affirmed.*