### C. T. C. INV. CO. v. LONDON & LANCASHIRE INDEMNITY CO. OF AMERICA.

#### No. 7202.

Circuit Court of Appeals, Seventh Circuit.

Dec. 27, 1940.

Rehearing Denied Jan. 30, 1941.

742

Alvin Landis, of Chicago, Ill., for appellant.

Chas. E. Heckler, Everett Lewy, and Paul E. Collins, all of Chicago, Ill., for appellee.

Before EVANS and TREANOR, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Plaintiff, at one time the holder of certain real estate bonds, brought suit to recover damages, alleging breach of defendant's contract guaranteeing payment of same. From the order allowing defendant's motion for summary judgment on the pleadings, plaintiff appeals.

Defendant's motion for summary judgment was based upon the Amended Complaint filed on August 22, 1939, defendant's Answer thereto, affidavits in support of and in opposition to such motion, and the answers of plaintiff to various interrogatories. From all of these the following appear to be the undisputed facts.

Plaintiff was the owner and holder of seven bonds, each in the principal sum of $1,000 and part of an issue of $350,000 of the Hostelry Company of Kankakee, an Illinois corporation, all of which were secured by a mortgage upon certain real estate. Defendant's contract of guaranty, attached to plaintiff's bonds, is in the following language: "The undersigned guarantees to pay to the legal holder hereof accrued interest within thirty days after receiving notice of default, and the principal sum within eighteen months after notice of default, in the payment of the principal sum, provided any coupon or note presented for payment shall be surrendered uncancelled and assigned to the guarantor; but should the value of the property securing the within note be diminished or impaired as security during the term of the trust deed by fire, windstorm, cyclone, tornado

or defect in title, the liability of the undersigned for both principal and interest shall be lessened in proportion to the extent of such diminution or impairment."

Default having been made in the payment of said bonds, foreclosure proceedings were instituted in the Circuit Court of Kankakee County, Illinois, and a bondholders' committee was organized for the protection of the interests of the various bondholders. The plaintiff and defendant thereupon, on February 2, 1932, entered into an agreement providing that plaintiff should deposit its bonds with the bondholders' protective committee without prejudice to any right of action which the plaintiff might have against defendant under its contract of guaranty and without prejudice to any defense which defendant might assert, it being the intention of the parties that the contract of guaranty was to be unaffected by the foreclosure proceedings. It was further provided that in any action brought by plaintiff for enforcement of the guaranty, the certificate of deposit to be issued by the protective committee upon deposit of the bonds would represent said bonds and the surrender uncancelled of such certificate of deposit would have the same force and effect as if the bonds represented by such certificate were surrendered, uncancelled and assigned.

Later, reorganization proceedings were instituted in the Federal Court and on May 10, 1935, defendant wrote plaintiff, as follows: "This is to advise that your Company as the holder of Certificate of Deposit for said bonds, or coupons connected therewith, is hereby authorized to give its acceptance, approval or consent to the said Plan of Reorganization, or to take any other action which you may see fit with respect to the reorganization of said property, without in any manner prejudicing or impairing the rights of your Company under the said agreement dated February 2, 1932, or under the said guaranty endorsed on said bonds; it being understood, however, that said Indemnity Company by this agreement does not admit any liability under its said guaranty." Various other steps were had in both the foreclosure and the reorganization proceedings, unimportant to our present discussion. Suffice to say, the plaintiff, on February 18, 1938, sold its certificate of deposit, representing the bonds in question, to one Nathan Gumbin for $4,000. The plaintiff had previously, in January, 1929, and in February, 1929, presented its bonds to defendant and demanded payment under its contract of guaranty and had again in May, 1936, presented its certificate of deposit and again demanded payment. Defendant did not repudiate its contract of guaranty, but declined payment, asserting among other things that the bonds had been paid.

Plaintiff alleges that the sale and transfer of its certificate of deposit to Gumbin did not divest plaintiff of its right to recover from the defendant on its guaranty the difference between the amount due upon the bonds and the amount received from sale of the certificate. Asserting that the contract of guaranty was several from the bonds, plaintiff contends that in view of the repeated tender to defendant and its refusals that plaintiff was justified in selling the certificate of deposit for the highest amount obtainable and thus minimizing the damages upon the guaranty.

Defendant's position is that plaintiff was required, under the terms of the guaranty, to present either the bonds or certificate of deposit to it to be assigned to the guarantor as a condition precedent to liability.

We think plaintiff mistakenly assumes that defendant's denial of liability on the guaranty when payment was requested, conferred on plaintiff the right to dispose of the bonds (or certificate) for the best price obtainable and then sue on the guaranty for the balance. Whether defendant was justified in denying liability we do not know—it was at all times asserting that it had information that the bonds had been paid. An issue of fact on payment has been raised in another part of the answer with which we are not presently concerned. Defendant may have had other defenses, but whether valid or not is beside the question. Defendant's denial of liability left two courses open to plaintiff—it could sue defendant on its guaranty or it could realize what it might in some other fashion. It could not do both, if the doing of one involved placing itself in a position where it could not comply with the condition precedent of the contract of guaranty. Plaintiff, however, sold the bonds (certificate) to a third party, thereby rendering it impossible for plaintiff to comply with the condition:—"* * * *provided any coupon or note presented for payment shall be surrendered uncancelled and assigned to the guarantor."* The record discloses no conduct on the part of defendant which could possibly be construed as a waiver of per-

formance of this condition and plaintiff's purpose in disposing of the certificate to a third party can have no bearing on the question under such circumstances.

Plaintiff argues that the guaranty was an unconditional one and cites numerous cases holding that a contract guaranteeing payment of a note is an absolute contract, that guarantor undertakes to pay the debt at maturity and can be sued immediately as an original promissor on the principal debtor's failure to pay. This argument is not pertinent and the authorities not in point. If it be conceded that the guaranty in question is in this respect unconditional, still plaintiff has an obligation to perform before or at the time of demanding performance by defendant—it must surrender the bonds (certificate) to defendant, uncancelled. This is a material provision of the guaranty contract, one entirely fair to both parties and one that defendant has a right to insist upon as a condition precedent to payment. It presumably was a factor entering into the make up of the premium charged for the guaranty. If defendant is required to respond on its guaranty, it has a right to pursue the obligor on the bonds and the supporting security in an effort to minimize its damage. In the event of payment by the guarantor it, and not plaintiff, became the judge of the course to pursue in reference to the bonds. A guarantor may impose any terms or conditions he may choose and will only be liable according to the terms of his agreement. LeRoy State Bank v. Keenan's Bank, 337 Ill. 173, 169 N.E. 1.

The law still recognizes, albeit with limitations, the right of an individual to freely contract in reference to his property and services. The defendant had a right to surround its contract of guaranty with such safeguards as it chose, within reasonable limitations. That it did not engage to pay the bonds, except upon condition that they be assigned, unpaid and uncancelled, is plain. Such limitation upon its liability was well within the law and well within the bounds of reasonableness.

Nothing that transpired in either the foreclosure or reorganization proceedings affected the relative status of the parties. By virtue of their mutual agreements their positions remained unchanged. It was the intention of the parties that this should be so. Plaintiff at all pertinent times (prior to sale of the certificate) retained either the bonds or the certificate of deposit and continued to claim liability on the guaranty and defendant to deny liability.

Plaintiff asserts "that defendant's refusal to perform its covenant of guaranty constituted a waiver of defendant's right of subrogation to the security for the debt and left plaintiff free to sell the security to protect itself from loss," and argues that plaintiff, upon refusal of payment by defendant, was then in the position where, if it retained the certificate of deposit and defendant sustained its defense of payment, plaintiff would take the risk of any losses in the depreciation in value of the bonds (certificate). The fallacy of this argument is immediately apparent. If the bonds had been paid as claimed by defendant, they (or the certificate) had no value at any time after payment, and no act could have enhanced or diminished their value, in fact their continued circulation would border upon fraud. Whether defendant's assertion of payment was well founded or not, it was entitled to be heard upon this issue. The mere fact that it was demanding to be heard on the issue of payment constituted no justification for plaintiff's placing itself in a position where it could not comply with its obligation.

Plaintiff leans heavily for support upon the decisions in Commercial Nat. Bank v. Richardson, 163 La. 933, 113 So. 152, and Maxwell v. Capehart, 62 Minn. 377, 64 N. W. 927; but a study of those cases convinces us that their facts are so different from the undisputed facts here present as to render them inapplicable. In neither of those cases was there a sale and transfer of the security but an attempted liquidation of the same. In the instant case the certificate representing the bonds was sold, endorsed, and transferred to Nathan Gumbin for the purpose, as plaintiff answers one of the special interrogatories "to transfer plaintiff's interest to said certificate for the purpose of reducing the damages incurred by the defendant under the guarantee." Gumbin thus became the owner of the bonds, or at least such title thereto as plaintiff had. In the Louisiana case the guaranty ran to the plaintiff; in the instant case the guaranty runs to the "legal holder" of the bonds. The query arises: What are Gumbin's rights under the guaranty? We mention only these differences in the fact bases of the two cases relied upon and the instant case. There are others.

It was not sufficient that plaintiff tender the bonds and request performance of the guaranty, but it must keep such tender good. Sanders v. Peck, 131 Ill. 407, 25 N.E. 508. Plaintiff could not, when its position was challenged by defendant, sell the primary obligations and retain a right of action on the guaranty. The pertinent facts in this respect, being undisputed on the pleadings, it was a proper case for the exercise of the power to grant summary judgment under Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The judgment of the District Court was correct and is affirmed.