NEW ORLEANS AND CARROLLTON RAILROAD COMPANY *v.* W. W. CHAPMAN.

A promise to the creditor to pay the debt of another is binding, and requires no consideration, or foundation, but the original debt.

APPEAL from the District Court, Seventh District, *Stirling*, J. *Brewster & Collins* and *Merrick*, for plaintiff. *Bowman & De Lee*, for defendant and appellant.

DUNBAR, J. The defendant is appellant from a judgment rendered against him on two promissory notes, executed by himself, to his own order, and delivered to the plaintiffs. Various grounds of defence are set up in his answer, and two amended answers. In the original answer he admits the execution of the notes, and that he is bound thereon—that he gave them to take up a debt due by his father to the plaintiffs, his father being insolvent; but that the plaintiffs agreed to give him a reasonable time for their payment, and that if this is accorded, he is still willing to pay. In his amended answer he avers, that the debts of his father, for which he executed the two notes sued on, consisted of two drafts and a note, all drawn by *James Chapman*, the father—that he has just discovered that his said father was not liable on the drafts, in consequence of the *laches* of the plaintiffs, and that he has reason to believe that one of the drafts ought to have been credited on the note—that,

13

New Orleans and therefore, he has erroneously given his obligations for a much larger amount
Carrollton Rail-
road Co. than his father really owed, and that he is entitled to credit therefor, and that,
W. W. Chapman. in fact, making allowance for these errors, and crediting him with the amount
of sundry collaterals placed in the hands of the attorney for the plaintiffs, he is
entitled to a judgment in his favor for the excess.

In his second amended answer, defendant states that he was induced to give
his notes, principally on the ground that the sureties, or accommodation endor-
sers of his father on the original drafts and note, were, as he supposed, liable
for the same, and that, wishing to save them from loss, his father being insol-
vent, he took up the debt—that he has just ascertained that the said sureties
were not liable at the time, having been discharged by the *laches* of the plain-
tiffs, and, on a portion of the debt, by prescription—that he, therefore, gave his
own notes in error, and prays judgment accordingly.

The evidence establishes that *James Chapman* originally owed the plaintiffs
the sum of thirty-six. hundred dollars, for which they held his note, endorsed
by *J. Nettles*—that at its maturity he executed a new note for $3,200, giving a
draft at ten months upon his factors, in New Orleans, for the curtailment and
interest, amounting to $674 45. This draft was endorsed by *J. Nettles.* When
the note for $3,200 matured, a new one was given for $2,880, and a draft, in
like manner, at ten months, given for curtailment and interest, amounting to
$589 67, also endorsed by *Nettles.* Both drafts were protested for non-pay-
ment, as well also the note for $2,880. The latter matured on the 11th of Feb-
ruary, 1844, and the drafts respectively on the 11th of December, 1842 and
1843. It is conceded that these three obligations formed the basis of the notes
sued on, as well as one other note, which is not included in the present suit.
*W. D. Winter*, a witness offered by defendant, states that the original claims
were placed in his hands for settlement—and that, on receiving them, he ad-
dressed the defendant in reference to them—that defendant stated he was under
no legal obligation to pay them, but that he had settled many of his father's
debts since he became the purchaser of his property, and was anxious and
desirous to settle them all, and would do so if the creditors would give him time.
Witness also states, that an additional motive for settling was, that defendant
did not wish his father's endorsers sued, who were then very much involved.
That the note and drafts were all exhibited to defendant, and no representation
made as to the liability of the parties thereto, other than that which really ex-
isted. The claims seem to have been placed in witness' hands for collection
about the 21st June, 1846, and immediately thereafter the defendant promised
to settle. The settlement was not, however, finally consummated till the 5th
of February, 1848.

In the original answer of defendant, filed nearly six years after his first pro-
mise to pay, he acknowledges the validity of his obligations and simply asks
for time.

We are satisfied, from the testimony, that *James Chapman*, the father, was
indebted to the plaintiffs to the amount for which his son, the defendant, gave
the promissory notes now sued on. To make a contract of this nature, a pro-
mise to pay the debt of another, valid, it is only requisite to show the pre-exis-
tence of the debt which one has promised to pay to him who is the creditor.
This is the *pact constitutæ pecuniæ* and requires no further consideration or
foundation than the original debt. Pothier, Traité des *Obligations*, 1st vol., p.
367, *Du Pact Constitutæ Pecuniæ.*

This view of the case renders it unnecessary to notice other questions argued <span style="float:right">NEW ORLEANS AND<br>CARROLLTON RAIL-</span>
,at much length in the brief of defendant's counsel.                                                    ROAD CO.

It is, therefore, ordered, adjudged and decreed, that the judgment of the W. W. CHAPMAN.
District Court be affirmed, with costs in both Courts.