(113 So. 152)

No. 26439.

## COMMERCIAL NAT. BANK v. RICHARDSON.

April 25, 1927. Rehearing Denied May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. **Guaranty ⬄4—Letter, agreeing to pay another's note on delivery of collateral attached, held intended as guaranty, and not offer to purchase collateral.**

Letter, agreeing to pay to bank the amount of third party's note on delivery to promisor of the collateral attached, *held* intended as a guaranty contract, and not a mere offer to purchase the collateral.

2. **Guaranty ⬄16(1)—Guarantying payment of note to bank in transaction whereby guarantor hoped to increase his company's credit at bank held supported by consideration (Civ. Code, art. 1896).**

Debtor and defendant were both officers in a company holding a note against the debtor, which plaintiff bank discounted. When note became due, defendant advised debtor to execute new note to plaintiff on collateral of stock in a related company of which defendant was president, thus hoping to increase company's credit at bank. Defendant guaranteed that on delivery of attached collateral he would pay note. *Held*, that there was cause or consideration for the guaranty, in view of Civ. Code, art. 1896.

3. **Contracts ⬄74—Debt due by another supports third party's promise of payment.**

A debt due by another is sufficient consideration to support the promise of a third party to pay for it.

4. **Guaranty ⬄6—Where guarantor signed guaranty at guarantee's request and delivered it to guarantee, held, that no further acceptance was necessary.**

Where a letter constituting a guaranty was signed by defendant as guarantor at the request of the plaintiff bank and was delivered to the bank, the guarantee, by defendant, *held*, that no further acceptance of the guaranty was necessary.

5. **Guaranty ⬄72—Where extensions on note were made with guarantor's knowledge or consent implied from terms of guaranty or ratification, guarantor held liable.**

Where there is evidence to show that the extensions on a note were made with guarantor's knowledge, and, furthermore, the guarantor's consent might have been implied from the terms of the guaranty agreeing to pay the note at maturity or any time thereafter, and there was evidence of ratification of the extensions, *held*, that the guarantor was liable on his guaranty.

6. **Guaranty ⬄56—Guarantor is not discharged by extension, where contract provides for extension.**

A guarantor is not discharged by an extension for payment or performance, if he consents thereto, as where the contract of guaranty expressly or impliedly provides for the extension.

7. **Guaranty ⬄72—Guarantor, ratifying action of parties in extending time for payment, is not discharged.**

A guarantor is not discharged because of extension of time of payment of note without his knowledge or consent, if, subsequent to the extension, he ratifies the action of the parties with full knowledge.

**8. Guaranty ⊚⇒43—Guarantor cannot insist on impossible strict compliance with guaranty conditions after refusing demand first made on him when strict compliance was possible.**

Where guarantor agreed to pay amount of note on delivery of collateral attached, and demand was made on him, which he refused at time when the collateral could have been delivered, *held*, that the guarantor could not insist on strict compliance by delivery of the collateral when delivery later became impossible.

**9. Guaranty ⊚⇒42(1)—Guarantor held bound by agreement to pay another's note on delivery of attached collateral, though collateral had become worthless.**

Guarantor, agreeing to pay bank the amount of a third party's note on the delivery of the collateral attached, *held* bound by such agreement, though the collateral had become worthless.

**10. Guaranty ⊚⇒38(3)—Guaranty to pay note at "maturity or any time thereafter" held a "continuing guaranty."**

Letter of guaranty in which guarantor agreed to pay a note "at maturity or any time thereafter" *held* a "continuing guaranty."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Continuing Guaranty.]

**11. Guaranty ⊚⇒81—Bank held not estopped through laches to sue guarantor agreeing to pay note at maturity or any time thereafter.**

Where guarantor agreed with bank to pay the note of a third party at maturity or any time thereafter, *held*, that the bank was not estopped to sue because of laches, in view of the terms of the guaranty agreement.

**12. Guaranty ⊚⇒81—Bank held not estopped through laches to sue guarantor who might have protected himself from loss by paying note at maturity and demanding attached collateral.**

Where guarantor agreed with bank to pay third party's note at maturity or delivery of attached collateral, and was well aware of the value of the collateral, and could easily have protected himself before any depreciation occurred by making demand on the bank and paying the note, *held*, that the bank was not estopped through laches from suing, because at the time of suit collateral was worthless.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by the Commercial National Bank against D. C. Richardson. Judgment for defendant, and plaintiff appeals. D. C. Richardson died, and D. C. Richardson, Jr., was appointed administrator. Annulled and reversed.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellant.

Cook & Cook, of Shreveport, for appellee.

LAND, J. On September 14, 1920, H. H. Todd executed a note for $20,000 payable to the order of the Commercial National Bank, with certain collateral attached, and stipulating 8 per cent. per annum interest from date until paid, and 10 per cent. on said amount, and interest as attorney's fees.

This note was given in renewal of a note for the same amount, payable to the order of the Superior Oil Works, and indorsed by that company to petitioner.

The last renewal of the Todd note of September 14, 1920, was May 3, 1921, the note falling due July 2, 1921.

On September 16, 1920, the defendant, D. C. Richardson, gave the Commercial National Bank a letter, which the bank claims was a guaranty for the payment of this note, and, the maker having failed to pay same, the present suit has been instituted by plaintiff to enforce the liability of defendant on the alleged contract of guaranty.

The following defenses have been set up by defendant:

(1) That there was no intention on the part of defendant to guarantee the payment of the note, but it was merely intended to offer to purchase the collateral, and, if the instrument indicates otherwise, it was in error, and should be reformed.

(2) That as an offer to purchase the collateral, the same was never accepted, and therefore did not constitute a completed contract.

(3) In the alternative, if the instrument may be construed as a guaranty, there was no consideration for defendant's signature.

(4) In the alternative, that the instrument was annulled and avoided by the plaintiff's granting extensions to the maker of the note without the consent or knowledge of the defendant.

[1] The letter from the defendant to the Commercial National Bank is as follows:

"Shreveport, Louisiana, September 16, 1920.

"Commercial National Bank, Shreveport, La. —Dear Sirs: Referring to note of H. H. Todd, dated September 14, 1920, due ninety days after date, in the amount of twenty thousand dollars ($20,000) to which is attached as collateral eleven (11) mortgage notes of the Paramount Petroleum Company for $1,000 each, and fifty thousand (50,000) shares of stock in the Paramount Petroleum Company, par value $1 each, beg to state that *I hereby agree to pay to the Commercial National Bank of Shreveport the amount of this note upon delivery to me of the collateral attached* and described above, agreeing to pay this *at maturity or any time thereafter.* [Italics ours.]

"Very truly yours,    D. C. Richardson."

The plaintiff bank disclosed on the trial the circumstances under which this letter was written, and we are satisfied, from the evidence before us, as well as from the tenor of the letter itself, that the contract is one of guaranty, and not a mere offer to purchase the collateral attached to the Todd renewal note.

Defendant has relied upon the testimony of Arthur T. Kahn, late vice president of plaintiff bank, as a corroboration of his own testimony that the letter in question was intended only as an offer to purchase the collateral in question. We do not find, however, that the testimony of this witness, when considered as a whole, has such effect. On the contrary, it supports the position of plaintiff bank that the letter contains a contract of guaranty for the payment of the note.

We quote the following from the testimony of this witness:

"Q. Then what did you do with that note?

"A. Had Mr. Todd to sign that, as I recollect it, with the collaterals specified, *and held it until Mr. Richardson passed through there.*

"Q. What do you mean by holding it out?

"A. Well, that we didn't run it through the books; *the transaction was not complete.*

"Q. Why was it not *complete?* Why didn't you consider it *complete?*

"A. I don't recall, but it was probably held out, probably the same day or the next day; and I spoke to Mr. Richardson, and asked him what he thought of the value of the collaterals; and he told me that they were perfectly good; and I asked him would he give us the amount of the note for the collaterals; and he said that he would; and I asked him if he would write that to us; and he said that he had no objection to writing that; and I drew up the agreement, which is recited in the petition, which Mr. Richardson signed.

"Q. You wrote that document yourself?

"A. Yes, sir.

"Q. Did Mr. Richardson have anything to do with the dictation of that document?

"A. I don't think that he did. I submitted it to him before he signed it.

\* \* \* \* \* \* \*

"Q. Now, Mr. Kahn, why was it you did not run the new note through, and hold it up as you have stated, until you got the document from Mr. Richardson?

"A. *I was holding it for that document.*

"Q. Now this document states that he (Richardson) agrees to pay the Commercial National Bank the amount of the note upon delivery to him of the collateral attached, and described above at maturity or any time thereafter. Now, was that the agreement Mr. Richardson made at the time?

"A. I don't know; *but I had that in mind when I wrote that and thought that.*

\* \* \* \* \* \* \*

"Q. Mr. Kahn, how did you as a representative of the bank, at the time that this obligation was taken, regard it, *whether as a guaranty or merely as to the value of the collateral?*

"A. *I regarded it as Mr. Richardson's agreement to pay us $20,000 and interest in exchange for the collateral at any time.*"

It is clear, from the above testimony, that the renewal note of Todd and the collateral attached was not accepted by the bank, but was held up, as an incomplete transaction, until the letter of defendant guaranteeing the payment of the note upon the delivery of the collateral, was placed also in the hands of plaintiff bank.

Defendant at the time, was president of the Paramount Petroleum Company, whose

stock and notes were attached to the Todd renewal note as collateral.

The Paramount Petroleum Company was the successor of the Superior Oil Works, in which company defendant had held the office of treasurer, and was also a stockholder and a director.

The original note in this case, of date December 17, 1919, for $20,000, had been executed by Todd, the intimate friend of defendant, and was made to the order of the Superior Oil Works for stock purchased by Todd in that company.

Todd was not only the secretary of the Superior Oil Works, and the general superintendent of the Paramount Petroleum Company, but he was also a director in both companies.

This note had been indorsed by the Superior Oil Works by defendant, as treasurer of that company, and was discounted by the Commercial National Bank. The Superior Oil Works received the amount of the note as payee from plaintiff bank, and had been succeeded by the Paramount Petroleum Company. The bank was out $20,000. Todd's note had to be paid, or renewed and secured. So the defendant, as Todd testifies, advised him to borrow the money from plaintiff bank, and to take up his note for $20,000, given to the Superior Oil Works for stock, as this step would improve the line of credit of the Paramount Petroleum Company at the bank.

[2] Defendant, as president of the latter company, was plainly interested in this transaction as a means of increasing the credit of his company at the Commercial National Bank, and, with this motive, gave his personal guaranty to pay the renewal note of Todd for $20,000.

[3] Under this state of facts, it cannot be contended that there was no cause or consideration for the contract of guaranty. The cause or motive for making the guaranty is apparent. R. C. C. art. 1896. Moreover, under our law, "a debt due by another is a sufficient consideration to support the promise of a third party to pay it." Flood v. Thomas, 5 Mart. (N. S.) 560; New Orleans Gas Light & Banking Co. v. Paulding, 12 Rob. 378; New Orleans & Carrollton Railroad Co. v. W. W. Chapman, 8 La. Ann. 97; R. C. C. arts. 3035, 3039.

[4] We are of the opinion that the evidence in the case shows a sufficient acceptance of the contract of guaranty by the bank. The letter evidencing the guaranty was signed by defendant, as guarantor, at the request of the bank, and was delivered to the bank, the guarantee, by defendant. This letter was written shortly after a prior verbal agreement between the parties. No further acceptance was necessary upon the part of the bank.

"If the guaranty is signed by the guarantor at the request of the guarantee, or if the guarantor's agreement to accept is contemporaneous with the guaranty, * * * the mutual assent is proved and the delivery to him or for his use completes the contract without further acceptance." 28 C. J. 899, 903; 12 R. C. L. 1067; Davis Sewing Machine Co. v. Richard, 115 U. S. 524, 6 S. Ct. 173, 29 L. Ed. 480; Davis v. Wells Fargo & Co., 104 U. S. 159, 26 L. Ed. 686; Notes 105 Am. St. Rep. 513 et seq.; C. C. arts. 1804, 1802; Hibernia Bank & Trust Co. v. Suc. of Cancienne, 140 La. 969, 74 So. 267, L. R. A. 1917D, 402.

[5-7] We are satisfied that defendant has not been discharged as guarantor, as the evidence shows that the extensions granted by the bank were made with his knowledge and consent. In the face of the note all parties, indorsers, or guarantors agreed to renewal.

The letter of defendant, agreeing to pay the note "at maturity or any time thereafter," apparently implies consent to the renewal of the note. The testimony of Kahn, the late vice president of the bank, shows that defendant was advised at various times as to the renewal of the notes.

H. H. Todd, maker of the renewal notes, testified that:

"Mr. Richardson asked me if I would be willing to borrow money and take up my note of $20,000, then held by the Commercial National Bank, and, if I would do this, I would improve the Paramount Petroleum Company's line of credit at the Commercial National Bank. I finally agreed to borrow the money and take up the note given to the Superior Oil Works.

"I believe that Mr. Richardson told me that the bank had requested him to tell me to come down and attend to my note at the bank."

Defendant clearly consented to the extensions of the notes.

"The guarantor is not discharged by an extension for payment or performance if he consents thereto, as where the contract of guaranty expressly or impliedly provides for the extension. * * * Furthermore, the guarantor is not discharged if subsequent to the extension he ratifies with full knowledge." 28 C. J. 1003.

"If the guarantor assents to the extension or if he subsequently ratifies the action of the parties, he is not in a position to take advantage of the extension." 12 R. C. L. 1085.

[8] After the maturity of the Todd note, and before any action was taken by the bank through trustees in the foreclosure of the mortgage notes of the Paramount Petroleum Company attached to the renewal note, Mr. Willis, the vice president of plaintiff bank who succeeded Mr. Kahn, made a demand upon defendant for the payment of this note. Defendant, according to the testimony of the witness, made no denial of liability on his guaranty, but stated he was not financially able to pay the note.

The witness offered to take defendant's note in payment of the securities attached to the Todd note, which could have been delivered at the time, but this offer was refused by defendant.

Defendant would not comply with his obligation at a time when all of the collateral could be delivered by the bank to him, and he cannot be heard to complain now, because plaintiff bank is no longer able to deliver the notes; especially as the bank holds a trust receipt susceptible of delivery, and which stands in the place of the notes. Defendant himself placed his own Paramount Petroleum Company notes in the hands of the same trustees.

It is clear that it was only through defendant's personal guaranty that Todd was enabled to obtain the money from the bank to take up his note held by the Superior Oil Works. Todd is insolvent.

[9] We fail to appreciate the force of the argument that plaintiff bank cannot recover against defendant on his guaranty because the collateral held by it had become worthless. The very purpose of a contract of guaranty is to provide against such contingency. There is no obligation upon the part of the bank warranting the integrity of the collateral in this case, when delivered to defendant. To impose such obligation upon the bank would be practically to hold that the bank is the guarantor of defendant, instead of defendant the guarantor of the bank.

The transferor does not warrant the solvency of the debtor, unless he has agreed to do so. When the solvency of the debtor is warranted by contract, such warrant extends only to the actual solvency of the debtor, and not to his future solvency. R. C. C. arts. 2647, 2648.

[10] Defendant saw fit to bind himself as guarantor in this case in the broadest and most unrestricted terms. He obligated himself to pay the note upon the delivery of the collateral, and agreed to pay "at maturity or *any time thereafter*." This is, necessarily, a *continuing guaranty*.

"It is not inconsistent for a contract of guaranty to be limited in the amount of the liability of the guarantor and yet be continuing or unlimited in time. The rule laid down in 20 Cyc. 1440, citing Mathews v. Phelps, 61 Mich. 327, 28 N. W. 108, 1 Am. St. Rep. 581, and Kimball Co. v. Baker, 62 Wis. 526, 22 N. W. 730, is that, although the amount of the liability of the guarantor be limited, if the time is not expressly limited, the guaranty is nevertheless a continuing guaranty, to the amount for which the liability of the guarantor is limited, if the terms of the instrument indicate that the purpose was

to give a standing credit to the principal debtor to be used from time to time." Hibernia Bank & Trust Co. v. Suc. of Cancienne, 140 La. 980, 74 So. 267, L. R. A. 1917D, 402.

" 'Signatures to obligations are not mere ornaments,' * * * and parties who sign negotiable instruments, or other solemn obligations, must expect to be held liable according to the tenor thereof." Thompson & Co. v. Sporl, 160 La. 352, 107 So. 135; Snell et al. v. Union Sawmill Co. et al., 159 La. 608, 105 So. 729.

[11, 12] Defendant is not in a position in this case to invoke the equitable doctrine of estoppel through the laches of plaintiff bank for two reasons: First, because of the tenor of the guaranty agreement; second, because defendant, as president of the Paramount Petroleum Company, was well aware of the value of the stock and notes of his company, and could have easily protected himself before any depreciation in the value of these securities occurred, by making a demand upon plaintiff bank for the collateral and paying the note.

Defendant testifies that at the time his letter was written, September 16, 1920, the stock of the Paramount Petroleum Company was selling at 75 or 80 cents on the dollar, and the bonds were selling around par.

The Todd note of date September 14, 1920, with collateral attached, was extended by renewal notes of dates December 13, 1920, March 1, 1921, and May 3, 1921; the last note falling due July 2, 1921.

Defendant testified that:

"Some time about in the early part of 1921 the bonds were valuable.

"Q. Now was this stock worth anything May 3, 1921?

"A. Yes, sir; I think the stock had some value.

"Q. About how much?

"A. I could not tell you that, but it began to depreciate and depreciated very rapidly.

"Q. About what time would you fix at which the stock became absolutely worthless?

"A. Well, I think it was worthless then, but we might not have known it.

"Q. About what time did you know it?

"A. About the same time."

Taking the valuation placed by defendant upon the stock and mortgage notes of the Paramount Petroleum Company attached as collateral to the Todd note of September 14, 1920, we find that this collateral was easily worth more than twice the face value of the note.

Defendant could have readily avoided any loss to himself, when the note fell due December 13, 1920, and again when it fell due on March 1, 1921, by paying the note and taking the collateral, but he remained silent and inactive, and left the plaintiff bank in the lurch, and with a loss of $20,000 to pocket.

The equities of the case obviously are not with defendant, as he was informed as to the value of the securities during the whole period covering the different maturities of the Todd note, while the bank apparently was not.

Under our view of the law and the facts of the case, the judgment of the lower court is erroneous.

Defendant has died since the appeal has been lodged in this court, and D. C. Richardson, Jr., has been appointed administrator of the estate of decedent.

The judgment appealed from is annulled and reversed.

It is now ordered that there be judgment in favor of plaintiff, Commercial National Bank, and against the succession of D. C. Richardson, deceased, in the sum of $20,000, with interest thereon from July 2, 1921, until paid, at the rate of 8 per cent. per annum, and in the further additional sum of 10 per cent. on the said amount of $20,000 and interest as attorney's fees.

It is further ordered that this judgment be paid in due course of administration by D. C. Richardson, Jr., administrator of said succession, including all costs in court below and on appeal.

It is further ordered that the right of said administrator to demand and receive, at the

time of payment, from plaintiff bank the collaterals attached to the Todd note of date May 3, 1921, the trust receipt to be received in lieu of the mortgage notes, be and the same is hereby recognized and reserved.