No. 3565

Second Circuit

F. MAYER BOOT & SHOE CO. v. DICKERSON ET AL.

July 1, 1929. Opinion and Decree.)
(October 1, 1929. Rehearing Refused.)

458

A. Leonard Allen, of Winnfield, attorney for plaintiff, appellee.

R. W. Oglesby, of Winnfield, attorney for defendants, appellants.

REYNOLDS, J. Plaintiff, F. Mayer Boot & Shoe Company, by this action sought judgment against M. M. Dickerson and J. R. Hall in solido for the sum of $760.73 with legal interest thereon from March 10, 1923, and 10 per cent. on the amount of principal and interest as attorney's fees on a contract of guaranty in words and figures as follows, to-wit:

"To F. Mayer Boot & Shoe Co., Milwaukee, Wis.
"Winnfield, La., Mar. 10, 1923.
"Gentlemen: For value received, and the further consideration that you extend a line of credit to the extent of nine hundred dollars to W. F. Dickerson of Winnfield, La., I do hereby guarantee the full and prompt payment to you of all indebtedness which said W. F. Dickerson has incurred or may hereafter incur for the purchase of merchandise from you and of all notes, bills receivable, drafts and checks taken in settlement for same, and any and all extensions and renewals thereof, without requiring notice of any kind in respect thereto, notice of every character being hereby expressly waived; provided, that my liability shall not at any one time exceed the sum of nine hundred dollars. Should you desire to collect from said W. F. Dickerson by suit or otherwise, I hereby agree to pay any and all expense connected therewith, including reasonable attorney's fees and collection charges. It is expressly agreed that neither an increase in the amount of the line of credit extended, nor the extension of the time of payment on any account or note or other evidence of indebtedness, nor the renewal of any note or evidence of indebtedness, shall in any manner relieve the undersigned from said obligation to you. It is expressly agreed that this guaranty is an open and continuing one and shall remain

in full force until expressly revoked by notice in writing duly served upon you at your place of business at Milwaukee, Wisconsin, and until all indebtedness incurred hereunder shall have been fully paid. Notice of acceptance of this guaranty and of the furnishing of the merchandise thereunder is hereby waived.

> "W. F. Dickerson
> "J. R. Hall
> "M. M. Dickerson."

Plaintiff alleges that on and prior to the giving of the guaranty, W. F. Dickerson was indebted to it in the amount sued for and that it thereafter sold and delivered more merchandise to him, increasing the indebtedness to it to $813.63, and that thereafter he was adjudicated a bankrupt and that it duly probated his indebtedness to it against his estate, and that the amount demanded still remains unpaid.

The defense is that the consideration of the guaranty had failed by reason of the fact that the guarantee had failed and refused to sell any more merchandise to W. F. Dickerson on a credit, and that the guarantors were discharged by the guarantee negligently failing to enforce a mortgage on immovable property situated in the town of Winnfield, La., and worth more than the amount of the debt owing to the guarantee, given by W. F. Dickerson to it to secure the payment of two promissory notes for the sum of $500 each drawn payable to his own order and by him endorsed in blank and pledged to the guarantee as security for the payment of his indebtedness to it.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendants in solido for the amount sued for and the defendants appealed.

## OPINION

W. F. Dickerson became a bankrupt December 31, 1923, and on his schedule of liabilities listed plaintiff as a creditor in the sum of $863.13. As a witness he testified:

"Q. You don't deny, Mr. Dickerson, that, at the time you went into bankruptcy, that you owed them for a whole bunch of goods?
"A. Yes, sir. I owed them.
"Q. They were paid by your going into bankruptcy?
"A. Yes, sir; a whole lot of it.
"Q. You know what per cent. your estate paid?
"A. About seventeen per cent."

D. L. Sawyer, whose testimony was taken by deposition, testified that he was plaintiff's credit manager, and that:

"The amount of the goods shipped to W. F. Dickerson after the guaranty was signed amounted to $283.68, which goods were sold and shipped him directly and solely on the guaranty or letter of credit; and we would not have shipped the goods above mentioned if we had not received the guaranty, and we relied upon it as being good."

This testimony of these two witnesses and the fact that W. F. Dickerson listed plaintiff as a creditor of his in the sum of $863.13 on his schedule of liabilities in bankruptcy satisfies us that plaintiff did sell and deliver him goods on a credit after the giving of the guaranty. The defense of failure of consideration is not sustained.

In respect of the two promissory notes, secured by mortgage, the witness Sawyer testified:

"W. F. Dickerson at one time voluntarily sent us two notes signed by W. F. Dickerson and payable to W. F. Dickerson, purporting to be secured by mortgage on certain real estate, which he asked us to

accept as security on his indebtedness. We did not accept these, but turned them over to our local attorneys for investigation. Our attorneys reported to us that in their opinion the security was not good. We then instructed our attorneys to return the notes to Mr. Dickerson. In the meantime Mr. Dickerson filed a petition in bankruptcy, and our attorneys reported the notes were sent to the referee in bankruptcy. During all this time we relied on the guaranty or letter of credit, and never surrendered same.

"Mr. Dickerson sent these notes to us voluntarily and without our request. These notes and mortgage were never accepted by us as additional security or in lieu of the guaranty or letter of credit."

The witness W. F. Dickerson asked about the notes, said:

"Q. Did you ever see these mortgage notes after that?
"A. In Alexandria in the United States court."

It thus appears that the notes were sent to plaintiff voluntarily by W. F. Dickerson and that they were surrendered by the plaintiff to W. F. Dickerson's representative in bankruptcy.

Plaintiff was not under obligation to accept the notes and did not accept them.

But defendants contend that plaintiff refused to accept the guarantee and that the notes and mortgage were executed and the notes sent to it in lieu of the guaranty.

J. R. Hall, one of the defendants, testified:

"Q. After you signed that (the guaranty) what happened?
"A. Well, a short time after we signed that letter of credit they (plaintiff) wrote us that the letter of credit was not acceptable, but if we would sign notes they would ship the goods.
* * * * *
"Q. How long after you signed this letter of credit before you heard from this company about it?
"A. It must have been a month possibly.
"Q. They wrote you back right straight in due course of business?
"A. Yes, sir; and stated it was not acceptable.
"Q. Then how long was it before you heard from them again?
"A. I didn't hear from them any more; did not hear from them any more until this proposition come up."

M. M. Dickerson, the other defendant, testified to the same effect. He was asked where plaintiff's letter refusing to accept the guaranty was, and he said it was lost.

Both defendants testified that after receipt of plaintiff's letter in question they heard nothing more about the guaranty until this suit was brought. Neither of them ever requested plaintiff to return the guaranty and neither of them offers any excuse for not doing so.

As to the alleged letter, plaintiff's witness, Sawyer, testified:

"A thorough examination of our records discloses no such correspondence."

The fact that plaintiff did sell and deliver merchandise to W. F. Dickerson after the guaranty was given discredits this contention and the testimony by which it is sought to maintain it.

Defendants in their answer alleged that:
"* * * when they signed the letter of credit on March 10, 1923, W. F. Dickerson was the owner of a house and lot in the town of Winnfield which he had agreed to mortgage to secure the amount he owed plaintiff and which he subsequently did mortgage to himself for the sum of one thousand dollars and endorsed the two five hundred dollar notes secured by the mortgage and turned them over to plaintiff as security for the said indebtedness; that the said property was well worth the amount placed on it; but that the plaintiff, through laches and negli-

gence, failed to exercise its privilege on said property, and finally lost it in the bankruptcy proceedings; that they would not have signed the letter of credit, worded as it was, if they had not known of this additional security; and they signed it for the sole purpose of securing additional and future credit for W. F. Dickerson * * *"

The mortgage referred to was executed on July 16, 1923, more than four months after the guaranty was given. Therefore the mortgage could hardly have been an inducement for the giving of the guaranty. But if it was, it was res between W. F. Dickerson and the defendants, with which the latter does not even claim plaintiff had anything to do, and plaintiff could not be affected by it.

There is a conflict between the allegations of the answer quoted and the testimony of the defendant Hall copied above. He says the plaintiff refused to accept the guaranty and demanded the personal notes of the defendants as a condition precedent to selling W. F. Dickerson more goods on a credit.

However, even if plaintiff had accepted the mortgage notes and they had been given as additional security for W. F. Dickerson's debt to it, plaintiff would not have been under any obligation to seize and sell the mortgaged property before calling on defendants for payment of W. F. Dickerson's debt.

"The creditor is not bound to discuss the principal debtor's property, unless he should be required to do so by the surety, on the institution of proceedings against the latter."

Civil Code, article 3046.

Nor would the guarantors have been discharged had the mortgage notes become worthless by reason of plaintiff's failure to seize and sell the mortgaged property.

In the case of Commercial National Bank vs. Richardson, 163 La. 933, 113 So. 152, which was a suit by the former against the latter as the guarantor of payment of the note of one Todd, held by the former, to which certain shares of stock belonging to Todd were attached as collateral security, one of the defenses was that the guarantor was discharged by reason of the collateral becoming worthless while in the possession of the bank; and dealing with this contention, the court said:

"We fail to appreciate the force of the argument that plaintiff bank cannot recover against defendant on his guaranty because the collateral held by it had become worthless. The very purpose of a contract of guaranty is to provide against such contingency. There is no obligation upon the part of the bank warranting the integrity of the collateral in this case, when delivered to defendant. To impose such obligation upon the bank would be practically to hold that the bank is the guarantor of defendant, instead of defendant the guarantor of the bank."

And, further:

"Defendant is not in a position in this case to invoke the equitable doctrine of estoppel through the laches of plaintiff bank for two reasons: First, because of the tenor of the guaranty agreement; second, because defendant * * * could easily have protected himself before any depreciation in the value of these securities occurred, by making a demand upon plaintiff bank for the collateral and paying the note."

As in that case, so here, the guaranty was unconditional; and if plaintiff had accepted the mortgage notes, then the guarantors here as the guarantor there might have protected themslves by paying W. F. Dickerson's debt and demanding and receiving the mortgage notes from plaintiff and foreclosing the mortgage themselves.

The evidence does not establish the de-

462

fenses set up by defendants. The trial judge did not think so nor do we.

"Signatures to obligations are not mere ornaments * * * and parties who sign. solemn obligations must expect to be held liable according to the tenor thereof."

Commercial National Bank vs. Richardson, supra.

We find no error in the judgment appealed from and accordingly it is affirmed.