## LIQUIDATORS OF EXCHANGE NAT. BANK OF SHREVEPORT v. UNITED STATES.
### No. 6777.

Circuit Court of Appeals, Fifth Circuit.
May 31, 1933.

See, also, 46 F.(2d) 566.

Richard H. Switzer, of Shreveport, La., for appellants.

Philip H. Mecom, U. S. Atty., and Elmer A. Mottet, Asst. U. S. Atty., both of Shreveport, La., and W. F. Evans, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for the United States.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

By this suit the liquidators seek to recover back as wrongfully collected a tax exacted of the bank, as transferee of the National Securities Company. Neither the amount nor the validity of the tax as against the securities company is in question, nor is it denied that the bank received assets from the company in excess of the value of the tax; but it is vigorously contended that the bank was not a transferee within the meaning of the statute under which the collection was made.[1]

This section "provides the United States with a new remedy for enforcing the existing 'liability, at law or in equity' " of a transferee. Phillips v. Comm., 283 U. S. 594, 51 S. Ct. 608, 610, 75 L. Ed. 1289. It does not create or impose an obligation not already fixed by municipal law. It merely provides a summary remedy for its direct enforcement. Phillips v. Comm. supra. Hatch v. Morosco Holding Co. (C. C. A.) 50 F.(2d) 138. In short, the act is procedural only, operating to put in the place of the taxpayer a transferee of his who has received money or property under circumstances making the transfer void or voidable as to creditors.

Appellants urge that the transfer was a

---

[1] The Revenue Act of 1926, § 280 (a) (1), 26 USCA § 1069 (a) (1), provides:

Section 280 "(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds).

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or War-Profits Tax Act."

valid one, unimpeachable at law or in equity. The government insists that it was not, claiming that the transfer was a voluntary one made while the transferor was insolvent, and therefore in fraud of its creditors. It insists that articles 1980 and 1984, Louisiana Civil Code strike the transaction down.[2]

That the securities company was insolvent when it made the transfer to the bank is not disputed, but it is denied that the transfer was either gratuitous or in fraud of creditors, it being insisted that the transfer was in discharge of a prior contract validly made upon good and sufficient consideration. The facts underlying these contentions are that Payne and others, stockholders of the Exchange National Bank, being stockholders of the National Securities Company, a corporation they had formed to take over some of the questionable paper of the bank, sold their stock in the bank with an agreement of guaranty on the part of Payne as to bills receivable and accounts due, and as against indebtedness which might affect the capital, surplus, and undivided profits of the bank. As security for this guaranty, Payne deposited in the bank $43,750 cash. This transaction occurred on February 7, 1925. Thereafter the securities company, desiring to obtain the benefit of any sums which might be realized by a return of the deposit in whole or in part, and believing that there would be a substantial equity coming to Payne, authorized by its directors, assumed Payne's guaranty to the bank and stepped into his shoes. This assumption was undertaken not to benefit Payne, but because it was believed that benefits would accrue to the company from it. It was testified to without dispute that, at the time the securities company passed the resolution and took over the guaranty, all parties in interest thoroughly discussed the matter, and there was no doubt that the object of the guaranty was to come in on the excess funds if there were any left. That the parties in interest thought and believed that the funds on deposit were more than enough to take care of any bad paper the bank would have, and that there would be a considerable amount in excess to turn over to the company. Matters turning out differently from what it had hoped they would, and the deposit fund having been exhausted, it became necessary for the company, in discharge of the guaranty it had undertaken, to turn over to the bank, all of its assets. It is this transfer which the government declares makes the bank a transferee under the act.

We do not think it does. It is undoubtedly the law that a corporation may not, as against its creditors, gratuitously transfer to, or incumber its assets for the benefit of, its stockholders or directors, or without consideration assume their obligations. In re Haas Co. (C. C. A.) 131 F. 232; Pilsbery v. Fricke, 139 La. 153, 71 So. 349; Love Mfg. Co. v. Queen City Mfg. Co., 74 Miss. 290, 20 So. 146, 147. And it is the law that the assumption of a contract of guaranty made after the original contract has been fully executed is not valid unless supported by new and independent consideration. Savage v. First Nat. Bank of Rome, 112 Ala. 508, 20 So. 398; Green v. Am. Refin. Properties (Tex. Civ. App.) 22 S.W.(2d) 343.

But this is not such a case. The assumption contract was undertaken by the securities company not gratuitously, and for the benefit of Payne, but for its own benefit, and upon what was regarded when the contract was made as ample consideration, the right to have what was saved from the funds Payne had deposited to secure his guaranty.

The District Judge found this to be the object and the purpose of the assumption of guaranty. He found neither bad faith nor lack of consideration in its original making. He thought, however, that the failure of the proof to show an acceptance of the assumption by the bank at the time it was made required it to be regarded as a transaction wholly between Payne and the securities company, with which the bank had nothing to do, and upon consideration from which the bank could derive no benefit. He thought that when, it having been definitely ascertained that the deposit would be exhausted, the securities company, without any new consideration moving to it, turned over its assets to the bank, the transaction, though in performance of the contract of guaranty, must be regarded as a mere voluntary conveyance by an insolvent, forbidden by the Louisiana law.

We do not think this is the correct view to take of the matter. It was not necessary for the bank to formally accept the assumption in order to obtain the benefit of it. The contract was not a mere offer of guaranty; it

[2] Articles 1980 and 1984 Louisiana Civil Code provide:

Art. 1980. "If the contract be purely gratuitous, it shall be presumed to have been made in fraud of creditors, if, at the time of making it, the debtor had not over and above the amount of his debts, more than twice the amount of the property passed by such gratuitous contract."

Art. 1984. "Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor."

was a binding contract of guaranty. Times-Picayune Pub. Co. v. Badon, 17 La. App. 114, 135 So. 631; Commercial Nat. Bank v. Richardson, 163 La. 933, 113 So. 152; Hibernia Bank & Trust Co. v. Succession of Cancienne, 140 La. 969, 74 So. 267, L. R. A. 1917D, 402.

We think that when the company came to make the transfer to the bank in order to carry out the valid agreement which, upon consideration, it had made, it was, not only its right, but its duty, to do so, and that the property so transferred passed to the bank free of the claims of creditors.

The judgment is reversed, and the cause remanded, for further proceedings not inconsistent herewith.

Reversed and remanded.