In the Matter of Transfer Tax upon the Estate of MARY HORLER, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; JAMES HORLER, Individually and as Executor, etc., Respondent.

First Department, December 14, 1917.

**Husband and wife — deed by wife to husband — joint tenancy — tax — transfer tax — exemptions.**

A conveyance by a wife to her husband of an undivided one-half interest in real estate owned in fee by her, in which she states after a description of the property, that it is the intention that both parties " shall hold and own the same as joint tenants and not as tenants in common," creates a joint tenancy in the husband and wife.

Upon the death of the wife prior to the amendment of the Tax Law by chapter 323 of the Laws of 1916, the succession of her husband was not taxable.

Under chapter 664 of the Laws of 1915, on the death of a joint tenant of certain bank accounts and mortgages, the right of succession was a taxable transfer.

Where a wife conveys an undivided one-half interest in certain mortgages and bank accounts to her husband, thereby creating a joint tenancy therein, upon her death there was only one succession or transfer, and, therefore, in the event that a tax is to be imposed, the statutory exemption should not be applied to each conveyance separately.

PAGE, J., dissented in part.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York, dated December 27, 1916, reversing a prior order fixing the tax herein and remitting the report to the appraiser; also an appeal is taken from the order of exemption on the supplemental report made and entered in the office of said Surrogate's Court on the 4th day of April, 1917, and also from the order denying the appeal of the Comptroller of the State of New York entered in said office on the 24th day of April, 1917.

*Alexander Otis*, for the appellant.

*William E. McReynolds*, for the respondent.

SHEARN, J.:

This is an appeal from an order of the surrogate entered April 24, 1917, which exempted the estate of the deceased, Mary Horler, from the payment of any transfer tax on the ground that the bank accounts, bonds and mortgages, and real estate, of which the estate consisted, were held jointly by the deceased and her husband, James Horler, and passed to James Horler by right of survivorship and not under the will of the deceased. (See 97 Misc. Rep. 587.) The State Comptroller contends that the real estate and mortgages were not held by the deceased and her husband as joint tenants, but as tenants in common.

On November 5, 1914, Mary Horler owned real estate in Brooklyn valued at $6,500. On that day she conveyed to her husband an interest in said premises by deed, which reads in part as follows:

" The said party of the first part, in consideration of one dollar and other good and valuable considerations, lawful money of the United States, paid by the party of the second part, does hereby grant and release unto the said party of the second part, his heirs and assigns forever, an undivided one-half interest and estate in and to all that certain lot, piece or parcel of land," etc. (described by metes and bounds); " it being the intention of the party of the first part to transfer and convey to the party of the second part an

undivided one-half interest and estate in the aforesaid parcel of land and the improvements thereon so that the party of the first part and the party of the second part shall hold and own the same as joint tenants and not as tenants in common, and so that the survivor shall have and take the absolute title and ownership in and to the same in fee simple absolute.

" Together with the appurtenances and all the estate and rights of the party of the first part in and to said premises. To have and to hold the above granted premises unto the said party of the second part and the party of the first part, their heirs and assigns forever, as joint tenants and not as tenants in common."

As to the mortgages: On October 26, 1914, Mary Horler, being the owner of two separate bonds and mortgages for $1,000 and $4,500, respectively, upon certain real estate situated in New Jersey and in this State, by two separate written instruments under seal bearing date on that date and made in consideration of one dollar and other valuable considerations, assigned and transferred to her husband, James Horler, an undivided one-half interest in each of the said bonds and mortgages, so that they held the same " as joint tenants and not as tenants in common." On November 5, 1914, the decedent, being then the owner of a bond and mortgage for $6,000, by instrument under seal bearing date on that day and made in consideration of one dollar and other valuable considerations, sold and transferred to James Horler an undivided one-half interest therein, so that they held that bond and mortgage " as joint tenants and not as tenants in common." On November 5, 1914, James Horler was the owner of a bond and mortgage for $16,000, and by written instrument under seal bearing date on that day and made in consideration of one dollar and other valuable considerations, he sold and transferred to his said wife an undivided one-half interest therein, so that they held the same " as joint tenants and not as tenants in common."

As to the bank accounts: At the time of Mrs. Horler's death there stood in her and her husband's name as joint tenants an account of $3,000 in the Emigrant Industrial Savings Bank, and one for $3,000 in the Irving Savings

Institution. The sums deposited in those accounts were moneys belonging to Mr. Horler. The accounts were opened on April 1, 1910, and February 18, 1913, respectively, and stood as joint accounts from their inception.

Mary Horler died on July 24, 1915. Chapter 664 of the Laws of 1915 (adding to Tax Law [Consol. Laws, chap. 60; Laws of 1909, chap. 62], § 220, subd. 7), defining as a taxable transfer the succession to an interest in intangible property held in the joint names of two or more persons, became a law May 20, 1915. Chapter 323 of the Laws of 1916, amending the said act of 1915 by striking out the word " intangible," became a law April 26, 1916. By the will of Mary Horler, probated October 8, 1915, she bequeathed to her daughter $5,000 in cash and her jewelry, the residue of her estate being by the will bequeathed to her husband, James Horler.

The first question to be determined is, whether the deed by the wife to her husband constituted the husband and wife joint tenants of the entire premises. Clearly, a mere conveyance by the wife of an undivided half interest would not create a joint tenancy. It is doubtful whether an intent to create a joint tenancy, expressed in the *habendum* clause, would be of any avail, because the latter might be fairly held to be repugnant to the estate granted. But in this deed, in the portion immediately following the description, the nature and kind of the estate granted is described in the following language: " It being the intention of the party of the first part to transfer and convey to the party of the second part an undivided one-half interest and estate in the aforesaid parcel of land and the improvements thereon so that the party of the first part and the party of the second part shall hold and own the same as joint tenants and not as tenants in common, and so that the survivor shall have and take the absolute title and ownership in and to the same in fee simple absolute."

In view of this language, the *habendum* clause of the deed is not repugnant to the estate granted. The intention to create a joint estate is manifest, and to do so " it is sufficient if there is an apt description of the estate intended to be conveyed, and that such estate is in law a joint tenancy." (*Matter of Klatzl*, 216 N. Y. 83, 88, 89.)

But the Comptroller contends that the estate conveyed was not in law a joint tenancy because it was not characterized by the four unities of title, interest, time and possession. Unity of title means that the estate of joint tenancy must be created by the same act or instrument. (*Colson* v. *Baker*, 42 Misc. Rep. 407; *Matter of Tilley*, 166 App. Div. 240, 242.) The Comptroller asserts that the wife derived her title from her grantor and the husband derived his from his wife, and, therefore, there was no unity of title. But it is unity of title in the joint tenancy with which we are concerned. Therefore, if the wife, as holder of the fee of the entire property, could by a deed to her husband, without the intervention of a third party, create in her husband and herself a joint estate, there would be unity of title and of time, for the estate would be created at one and the same time by one instrument. The reason for requiring the intervention of a third party has disappeared since the enactment of the various acts with respect to married women. A married woman is free to deal with her property as she sees fit. Being free to convey it to her husband so as to alienate her entire interest, there is no reason in the world why she cannot alienate less than an entire interest, or create in herself and another any interest in the whole known to the law. I certainly agree with what former Chief Judge BARTLETT said in *Matter of Klatzl* (*supra*). After pointing out that the only substantial difference between tenancy by the entirety and joint tenancy is that in the former the estate cannot be severed except by their joint consent (*Hiles* v. *Fisher*, 144 N. Y. 306, 312), he said, concerning the effect of a deed by husband to wife which in his opinion and that of three other judges created a tenancy by the entirety: " I see no reason why the husband could not convey to his wife such an estate as she would get by a similar deed to them from a third person, and at the same time reserve for himself the same rights he would have under such a deed. Even if the deed created a mere joint tenancy it would be good " (p. 88). This language is just as applicable to a conveyance by the wife to her husband as to a conveyance by husband to wife. It is commonly recognized that as to personalty a joint tenancy may be created in husband and wife by an assignment executed by

the one having the entire interest to husband and wife jointly, and that in such case the four unities are present. (*Matter of Dalsimer*, 167 App. Div. 365.) So far, therefore, as concerns unity of title and time, both exist where the joint estate is created by the deed of the husband or wife, owner of the fee, to the other directly.

It is conceded that in such case there is unity of possession; but, the Comptroller argues, the estate cannot in law be a joint estate because there is no unity of interest, *i. e.*, equality of interest. This contention is based upon the fact that, while the wife could convey her interest without the consent of her husband, he could not convey his undivided one-half interest without her consent, because of her dower right. This is unsound. Both have an equal *interest* in the property, although their respective rights to dispose of their respective interests may not be exactly the same, provided the inequality is created by law and not by the deed. The requirement of unity or equality of interest has to do with the interests created by the joint tenancy instrument, and it is not violated merely because the relative rights of the joint tenants to dispose of their half interests may differ in certain respects by reason of dower or other rights or limitations resulting from the independent operation of law. Accordingly, we find present in this estate all four unities necessary in a joint tenancy, and we hold that a joint tenancy may be created in husband and wife by a deed executed by the one holding the fee; and, further, that where the conveyance is of an undivided one-half interest and in describing that interest the intention to create a joint interest is clear, the nature of the estate created is that of a joint tenancy.

The next question is whether, the estate being joint, the succession of James Horler to the use and enjoyment of his wife's interest on her death was a taxable transfer. As to the mortgages and bank accounts, there can be no serious question but that the interest passing on the death of one joint tenant, the right of succession, is taxable, as Mary Horler died subsequent to the taking effect of chapter 664 of the Laws of 1915. (*Matter of McKelway*, 221 N. Y. 15.) With respect to the real estate, the matter is not so clear. The reasoning of former Chief Judge BARTLETT in *Matter*

of *Klatzl* (*supra*) is very persuasive, where he shows that in the case of tenancy by the entirety each was entitled to the enjoyment, use and profits of an undivided half during his or her life, with an absolute fee in the whole in case of surviving the other, and that the undivided half to which the husband was entitled during his life never passed into the possession of the wife until her husband's death, and consequently then became subject to the Transfer Tax Law. If that were the case with tenancy by the entirety, *a fortiori* it would be true of joint tenancy. But the chief judge was alone in this view, the other judges being evenly divided as to whether the tenancy was entire or in common; and the estate was not held taxable on the ground that the property was held by the entirety, but was held subject to a tax because three judges considered the tenancy one in common and because the chief judge deemed it taxable upon another ground. In view, however, of the decisions of this court in both the First and Third Departments, in *Matter of Dalsimer* (167 App. Div. 365; affd., 217 N. Y. 608 [subsequent to *Matter of Klatzl*]), and *Matter of Tilley* (166 App. Div. 240; affd., 215 N. Y. 702) it must be held that, the right of survivorship having been created by the instruments establishing the joint estate, the succession of the survivor to the enjoyment of the cotenant's undivided half interest in the real estate was not a taxable transfer at the time of Mary Horler's death. Both of these cases dealt with intangible property, but the tenancy was joint, and there is no difference in principle between the right of survivorship in the case of tangible property and in the case of intangible property, in the absence of a statute. The situation presented in this case is one that cannot arise in the future, for the Legislature in 1916 defined such a succession of interest as occurred on the death of Mary Horler to be a taxable transfer. Counsel for the State Comptroller cites *Matter of Moebus* (178 App. Div. 709); but while that case dealt with a tenancy by the entirety and held the succession taxable, the decision was based, and necessarily so, on the 1916 amendment (Chap. 323), which was in effect prior to the death of the cotenant. The decision in *Matter of Moebus* (*supra*), however, answers the objection dwelt upon by the learned surrogate that a

tax upon the transfers of the half interest in the mortgages and bank accounts would be invalid as taking property without due process of law. Accordingly, the surrogate was right in holding that the real estate was not taxable.

It remains to note the contention of the respondent that the half interest in each mortgage and bank account should be deemed to be separately transferred and the statutory exemption applied to each separately, in the event that a tax is to be imposed. This cannot be allowed. No matter how many items of property, and no matter how various the dates of the instruments creating the joint tenancy, there was only one succession or transfer, and that occurred, under the statute, upon the death of the cotenant.

The decree of the surrogate should be reversed, without costs, and the proceeding remitted for appraisal of the interest in the mortgages and bank accounts transferred.

CLARKE, P. J., SCOTT and SMITH, JJ., concurred; PAGE, J., dissented as to the real estate.

Order reversed, without costs, and proceedings remitted as stated in opinion.