NINA R. PETERSON v. LAKE CITY BANK & TRUST COMPANY.[1]

July 18, 1930.

No. 27,968.

[1]Reported in 231 N. W. 794.

*George H. Hammond* and *Phillips & Lindmeier,* for appellant.
*L. R. Lunde* and *Murdoch & Lothrop,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its motion for a new trial.

The action is in replevin to recover certain bonds of the face value of $11,000. Defendant is the administrator of the estate of John Peterson, the deceased husband of the plaintiff. Plaintiff contends that the bonds were held by her and her husband in joint tenancy. The administrator denies this.

Mr. and Mrs. Peterson lived in Lake City. She helped him in his business, and she thereby aided him in the accumulation of a fair portion of his property. She made a small contribution thereto with her own money soon after their marriage. They owned stock in Cities Service Company and in the Northern States Power Company. These stocks were in their names jointly and possibly as joint tenants.

Mr. Ed L. Burghardt and Dr. J. E. Matson, representing Drake-Jones Company of Minneapolis, on November 18, 1926, called at the Peterson home to sell bonds. Negotiations were had. The discussion was lengthy. Dr. Matson explained what was meant by joint tenancy. An order was given for bonds of the Federal Mortgage Company of the par value of $8,000. The Cities Service Company stock and the Northern States Power Company stock was turned toward the payment therefor. Both Mr. and Mrs. Peterson signed the order. Mr. Peterson in the presence of Mrs. Peterson suggested that the stock being purchased should be held in joint tenancy. He said he wished it that way. There was some talk of the bonds' being registered in that way, and this suggestion was passed on to Drake-Jones Company, which advised that the bonds be not registered. One of the salesmen present at the time the order was given and after it was signed wrote upon the margin of the order: "To be issued in joint tenancy." The bonds were payable to bearer. They

were delivered in an envelope upon which was written: "Property of John Peterson and/or Nina R. Peterson or survivor."

Accompanying the delivery of the bonds was a duplicate invoice which showed a sale of the bonds to "Mr. John Peterson and Mrs. Nina R. Peterson, as joint tenants, not as tenants in common, with right of survivorship." The bonds with such notations were delivered to Mr. and Mrs. Peterson, who put them in their safety deposit box at a local bank. There they remained until after Mr. Peterson's death except when Mrs. Peterson took them out to cut off the interest coupons.

In January, 1928, Mr. and Mrs. Peterson again purchased $3,000 of bonds through Mr. Burghardt and directed that they be issued the same as the previous $8,000 in bonds. This was understood to relate to the matter of joint tenancy. These bonds were delivered inclosed in an envelope upon which was written, "Property of John Peterson and/or Mrs. Nina R. Peterson, as joint tenants, not as tenants in common, with right of survivorship." John Peterson knew of these notations. All these bonds were listed in the books of Drake-Jones Company as sold to "John Peterson and/or Nina R. Peterson, as joint tenants, not as tenants in common, with right of survivorship."

After the purchase of the $8,000 worth of bonds and before the purchase of the $3,000 worth of bonds, Mr. Peterson loaned $1,000 to the I. O. O. F. lodge of Lake City, of which he was an officer, and as such official he was one of the signers of the note and the mortgage securing the same, both of which were made payable to "John Peterson and/or Nina R. Peterson, as joint tenants, to either or the survivor." There was no transfer of the bonds in question by one of these tenants to the other. The bonds were purchased from Drake-Jones Company and, being payable to bearer, the title passed by delivery. The written notations and the oral testimony are persuasive, and convincing as to the intention and the plan. These bonds were received by Mr. and Mrs. Peterson and kept in the original inclosures with notations mentioned in a safety box to which both had access. They were there in the undivided possession of the joint tenants until the death of Mr. Peterson. The fact

that the two persons did not make equal contribution, if they in truth did not, to the purchase price is not important.

Appellant devotes much attention to the requisites of a valid gift, which include the intent to make a valid gift, delivery of the subject matter, acceptance by the donee, all involving a renunciation by the donor and the acquisition by the donee of an interest in and title to the subject of the gift. Here the parties acquired these bonds together. The only gift involved, if any, was that of Mr. Peterson in giving to Mrs. Peterson an interest in what they were giving for the bonds so that she had an equal interest with him in what they were giving for the bonds, if she did not already have such. It is clear that he as well as she was intentionally appropriating what they gave in consideration of acquiring the property as joint tenants.

By the transaction Mr. and Mrs. Peterson acquired the same interest in the bonds, such interest accrued in the single transaction, the interest of each commenced at the same time, and the property was received and held by one and the same undivided possession. The right of survivorship was present. The presence of such elements constitutes a joint tenancy. From the viewpoint of a layman the right of survivorship is the principal characteristic of a joint tenancy. That is what made a joint tenancy attractive to the parties to this transaction. That was the goal which they mutually sought.

A joint tenancy may exist in personal property, and it may be established by parol though here there is supporting documentary evidence.

The evidence sustains the findings.

Affirmed.