**SUISMAN & BLUMENTHAL, INC., v. EATON, Collector of Internal Revenue.**

**No. 3554.**

District Court, D. Connecticut.
Aug. 23, 1933.

Henry M. Gretsch, of New York City (Louis E. Spiegler, of Washington, D. C., of counsel), for plaintiff.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford,

764

Conn. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and S. E. Blackham, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

HINCKS, District Judge.

This is an action at law brought to recover the sum of $234.23, collected, it is claimed, illegally, on account of an excess profits tax liability for 1917.

The case has been submitted to the court upon an agreed statement of facts, from which the following appear:

Suisman & Blumenthal on August 31, 1917, was a partnership which will hereinafter be referred to as the "partnership." On said date the partnership was dissolved and on the following day transferred all its assets to the plaintiff, a corporation of the same name and address, which hereinafter will be referred to as the plaintiff "corporation." On April 1, 1918, the partnership filed its excess profits tax return for the period from January 1, 1917, to August 31, 1917, which showed no excess profits tax liability. Thereafter the partnership by its written waivers extended the time allowed by law for the assessment and collection of said tax by two years. On June 23, 1922, an additional excess profits tax exceeding $5,000 was assessed against the partnership. On July 11, 1922, the partnership filed a claim in abatement thereof, with the result that prior to April 30, 1927, the Commissioner of Internal Revenue, by sundry certificates of overassessment, reduced the assessment aforesaid against the partnership to the sum of $216.89.

On February 18, 1927, the plaintiff corporation received from the Commissioner a letter of the same date as follows: "As provided for in Section 280 of the Revenue Act of 1926, there is proposed for assessment against you the amount of $1,288.91, plus any accrued penalty and interest, constituting your liability as a transferee of the assets of Suisman & Blumenthal, a partnership, Hartford, Connecticut, for additional income and profits taxes in the amount of $1,288.91 assessed against the above-named partnership for the year 1917 as per the attached statement."

On April 22, 1927, plaintiff executed and filed with the Commissioner a waiver of its right to file a petition with the Board of Tax Appeals, and in fact filed no such petition with said Board. On June 25, 1927, the Commissioner duly assessed against the plaintiff the sum of $234.23 (consisting of $216.89 tax and $17.34 interest), which was the unabated balance of the $5,000 assessed on June 23, 1922, against the partnership as above set forth.

On July 9, 1927, the defendant collector of internal revenue made demand upon the plaintiff to pay said assessment of $234.23, and on July 19, 1927, the plaintiff paid the same under protest.

On August 15, 1927, the plaintiff filed a claim for the refund of the payment made as aforesaid, which was rejected by the Commissioner on September 7, 1928. A later "supplementary" claim for refund was treated by the Commissioner as a "request to reopen the claim" and denied on February 18, 1932.

The assessment of June 25, 1927, against the plaintiff as transferee, as appears from the earlier letter from the Commissioner to the plaintiff quoted above, was predicated upon section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note).

The plaintiff contends that, under section 250 (d) of the Revenue Act of 1918 (40 Stat. 1083), the collection of the tax assessed from the partnership became barred on April 1, 1923, except for the waivers which extended the period for collection to April 1, 1925; and that on April 1, 1925, the original liability of the partnership and also the liability of the plaintiff as transferee under section 280 of the act of 1926 (26 USCA § 1069 and note) became finally barred. From this it is contended that its subsequent payment of the tax under protest is recoverable.

The defendant, on the other hand, without conceding any of the foregoing contentions, maintains (inter alia) that suit for the recovery of the tax paid as aforesaid is barred under section 611 of the Revenue Act of 1928 (26 USCA § 2611).

On these facts I conclude:

(1) That the liability of the partnership for the excess profits tax of 1917 was extinguished on April 1, 1925. Revenue Act of 1918, § 250 (d), 40 Stat. 1083; Revenue Act of 1921, § 250 (d), 42 Stat. 265; Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676.

(2) That the liability of the plaintiff, as transferee of the partnership, necessarily terminated with the liability of its transferor on April 1, 1925.

(3) That thereafter the action of the Commissioner in purporting to assess the plaintiff was wholly without effect, and the action of the defendant collector in demanding and collecting the purported tax from the plaintiff was without warrant in law.

(4) That, notwithstanding the foregoing conclusions, the plaintiff is precluded by the provisions of section 611 of the Revenue Act of 1928 (26 USCA § 2611) from the recovery sought herein.

■■ The first and third conclusions set forth above will, I believe, provoke no controversy. The second conclusion above seems to me equally clear, for section 280 of the Revenue Act of 1926 saddles a transferee with no new liability, but merely extends to the United States a new remedy whereby without resort to the courts it can enforce a liability already existing under the municipal law. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289. Hatch v. Morosco Holding Company (C. C. A.) 50 F.(2d) 138. This liability is somewhat loosely labeled as one resulting from the so-called "trust fund doctrine." Pomeroy's Equity Jurisprudence, vol. 3, § 1046. But "of course a creditor whose claim is barred by the statute of limitations cannot maintain a bill to set aside a fraudulent conveyance." Pomeroy's Equity Jurisprudence, vol. 5, § 2312. And on elementary principles a creditor whose claim has been extinguished has no standing upon which he may invoke the aid of equity in the enforcement of his outlawed claim.

■ The fourth conclusion above stated is vigorously contested and has required much consideration. I have taken as my starting point the case of Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415, wherein it was held that section 611 of the Revenue Act of 1928 (26 USCA § 2611) was intended to have a retroactive effect, and that even so construed it was valid. This case, however, had to do only with the application of that section of the statute to payments made by original taxpayers, as distinguished from transferees of original taxpayers. I am now confronted with the question whether the doctrine of Graham & Foster v. Goodcell applies to payments made by transferees—a narrow point, but, so far as the briefs disclose, one of first impression.

The language of section 611 is open to the construction that the section applies equally to transferees and to "taxpayers." It is not specified that its provisions are restricted to "payments by taxpayers" only. By its terms it applies to any "payment" therein described, and a payment by a transferee equally comes within the scope of the language. Such a construction is admissible. But was it within the legislative intent that the section should be so construed? As to this, it is enough to say that all the reasons attributed in the Graham

& Foster decision to Congress for the enactment of this section, although there expressed with particular reference to the effect of the section upon an original taxpayer, are broad enough to compel the conclusion that the legislative intent extended to transferees of the taxpayer as well.

■ But, holding as I do that Congress intended section 611 to apply to transferee as well as to taxpayer, it still remains to consider whether the retroactive application of that intent is valid. Here again we find the answer in Graham & Foster v. Goodcell. For there the court finds the statute valid upon the ground that it corrects the administrative defect resulting from the mistaken belief theretofore entertained by the Treasury Department that the right of the United States to distrain survived the statutory limitations set upon the collection of a tax under the law. The administrative defect resulting from this misapprehension necessarily extended to collections from transferees as well as from taxpayers.

Thus in the period prior to the Revenue Act of 1926 the only right of the United States to enforce its tax claim against its taxpayer's transferee was by bill in equity, to which, as I have already pointed out, it could resort only as long as its original claim against the taxpayer had life. Believing, as it then did, that the United States could legally distrain against a taxpayer for a claim after its right to sue therefor was barred, the Department was similarly mistaken in its belief that the right to follow the assets of the taxpayer in equity survived its right to sue. This misapprehension was not removed by the Revenue Act of 1926, for the institution of administrative proceedings against a transferee might begin well within the time limits prescribed by section 280, par. (b) (1) and (2), of the Revenue Act of 1926, 26 USCA § 1069 (b) (1, 2), and yet be too late to have validity, if the right of collection against the taxpayer had sooner expired. This is so because section 280 (a) (1) of said act creates a remedy of limited life—limited to the continuance of the primary right against the taxpayer. Section 280, par. (b) (1) and (2), is in the nature of a statute of limitations, and cannot be construed to prolong the remedy afforded by the preceding paragraph. And so it was not until the decision in Bowers v. New York & Albany Company, 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, was handed down in 1927 that the misapprehension of the Department with respect to the remedies of the United States against transferees was finally removed. It

results that the holding of Graham & Foster v. Goodcell is effective with respect to a transferee.

In Graham & Foster v. Goodcell, the court points out that a retroactive application of a statute is not inequitable with respect to the taxpayer. The same is true with respect to a transferee. Indeed, in this very case it appears that the transferee has had the benefit of the partial abatements which were made by the Department to the taxpayer-transferor. Moreover, a transferee who acquires all of the assets of a taxpayer takes them subject to the equitable lien of the United States for taxes due. If the limitation of section 611 of the Revenue Act of 1928 is not inequitable as against the taxpayer, as has been established, in a case such as this no intervening equity in favor of the transferee appears transcending that of the United States.

Judgment for the defendant, with costs.