ANNIE TROLL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61215. Promulgated November 29, 1935.

*W. A. Allen, Esq.*, for the petitioner.

*W. W. Kerr, Esq., C. A. Ray, Esq.*, and *Bernard B. Daniels, Esq.*, for the respondent.

OPINION.

McMAHON: This is a proceeding for the redetermination of the petitioner's liability, as transferee, for the deficiencies in tax and penalties asserted by the respondent against Charles Troll, and interest, in the total amount of $9,119.87, as follows:

| Year | Tax liability | Tax assessed | Deficiency | Penalty | Interest |
|---|---|---|---|---|---|
| 1917 | $103.34 | None | $103.34 | $51.67 | $26.31 |
| 1918 | 365.91 | None | 365.91 | 91.48 | 93.16 |
| 1919 | 523.78 | None | 523.78 | 130.95 | 133.35 |
| 1920 | 1,480.11 | None | 1,480.11 | 370.02 | 376.84 |
| 1921 | 3,125.68 | None | 3,125.68 | 781.42 | 1,465.85 |
| Total | 5,598.82 | None | 5,598.82 | 1,425.54 | 2,095.51 |

It is alleged by petitioner (1) that the respondent erred in determining that she is liable as transferee for the taxes due from Charles Troll; (2) that he erred in assessing taxes after they were barred by the statute of limitations, especially section 311 (b) (1) of the Revenue Act of 1928; (3) that, in any event, he erred in determining a liability against petitioner in excess of the fair market value of the property received by her from Charles Troll; (4) that even if petitioner is liable as transferee for the tax liability, he erred in assessing against petitioner the penalties and interest on the tax liability of Charles Troll; and (5) that he erred in his determination of items of income of Charles Troll for the years 1917 to 1921, inclusive, and failed to give him credit for proper deductions and credit for losses incurred in those years.

The amended answer of the respondent contains several affirmative allegations of fact, all to the effect that petitioner is liable as transferee. In her reply to respondent's amended answer the petitioner denied all of the affirmative allegations of the respondent.

Petitioner is an individual, with residence at St. Louis, Missouri.

In a notice of deficiency dated December 22, 1926, the respondent determined against Charles Troll, the taxpayer and transferor, the deficiencies and penalties for failure to file returns for the years 1917 to 1921, inclusive, as set forth hereinabove. On February 10, 1927, Charles Troll filed with this Board, under Docket No. 23962, a petition for redetermination of the deficiences and penalties. On May 16, 1931, the Board entered an order of dismissal in that proceeding on the motion of the respondent to dismiss for lack of prosecution, and therein ordered that the deficiencies and penalties for the years 1917 to 1921, inclusive, are in the amounts determined by the respondent as above set forth.

Upon the death of her father in 1901 and her mother in 1906, the petitioner acquired from them stocks and bonds in the aggregate

value of about $25,000. This property she placed in the hands of her brother, Charles Troll, as trustee, for management.

On January 1, 1929, Charles Troll executed, in favor of petitioner, a demand promissory note for $10,000, in which it was stated that he had pledged with petitioner, as security for payment of the note, a deed of trust of John Duggan and wife dated January 5, 1914, relating to Charles Troll's interest in property in East St. Louis, Illinois, as acquired by deed dated February 1913 from Theodore C. Peltzer and wife.

On March 1, 1930, the petitioner and Charles Troll entered into an agreement called "Accord and Satisfaction Agreement Trusteeship Account." This instrument established a balance due petitioner from Charles Troll at that date in the amount of $9,570. Therein Charles Troll, in satisfaction of such amount, agreed to convey to the petitioner certain real estate described as follows: (1) Part of a lot in Carondolet Commons being the north portion of block 3240 of the city of St. Louis, fronting 302 feet 6 inches on the south line of Espenschied Street by a depth southwardly of 152 feet; bounded east by Van Buren Street and west by Polk Street; (2) an undivided one-third interest in a part of a lot in Carondolet Commons being the north portion of block 3241 of the city of St. Louis, fronting 220 feet 7 inches on the south line of Espenschied Street by a depth southwardly of 152 feet; bounded west by Van Buren Street and east by property of a railroad company; and (3) a 14/50 interest, as reflected by a declaration of trust executed by William Landwehr, in lot 59 of the Common Fields of Cahokia, situated in the city of East St. Louis, Illinois, consisting of 40-7/100 acres, more or less. The first tract was accepted by petitioner at a valuation of $3,000, the second parcel at $1,000, and the third tract at $4,961.44, a total of $8,961.44 for all this property. The balance of $608.56 due petitioner was to be paid in cash. Therein petitioner agreed to release Charles Troll from all liabilities whatsoever, upon compliance with the terms of the instrument.

The real estate described in the accord and satisfaction agreement was duly transferred on March 1, 1930, by Charles Troll to petitioner in accordance therewith for the full and adequate consideration of $8,961.44, as above set forth; and as to each tract or parcel the fair market value thereof did not exceed the valuation at which it was then accepted by petitioner.

On March 1, 1930, Charles Troll also transferred to petitioner for a recited nominal consideration the remaining undivided two-thirds interest in the portion of the lot representing the north portion of block 3241 of the city of St. Louis, which undivided two-thirds interest had a fair market value at that time of $1,650; an undivided one-third interest in a lot in block 3240 having a frontage

on Catalan Street, which had a fair market value at that time of $250; and an undivided one-third interest in a lot in block 3241 having a frontage on Catalan Street, which had a fair market value at that time of $600; and each of these fair market values was in excess of any nominal consideration paid therefor by petitioner.

Before the deeds were executed by Charles Troll transferring the above property to petitioner, title to the property was examined by a title company at the instance of Harry Troll on behalf of the petitioner.

By a declaration of trust executed February 28, 1930, Charles Troll declared that Edward Koeln had paid one half the taxes upon property purchased for $4,500 in 1922 by Troll, being the parts of lots representing the north portions of blocks 3240 and 3241 of St. Louis. Therein Charles Troll stated and agreed that Koeln should have the right, until 1950, to one half of any profit upon the sale of the property, the basis for the calculation of the profit to be the cost of $4,500 to Troll plus 6 percent interest thereon to date of sale. This instrument bears the written approval of the petitioner. This instrument neither adds to nor detracts from the values of the properties as we have fixed and found them as heretofore set forth.

At March 1, 1930, Charles Troll was without funds and hence did not have cash to pay petitioner the balance of $608.56 which was due her under the accord and satisfaction agreement; but it was subsequently duly paid in cash by Harry Troll, another brother of petitioner, at the direction of Charles Troll, out of an amount collected by Harry Troll for Charles Troll under a deed of trust for $3,000. This deed of trust was held by petitioner to secure payment of the note for $10,000 executed in her favor by Charles Troll on January 1, 1929, as heretofore set forth. This cash payment settled the balance in full. Thereupon, petitioner surrendered the promissory note in the amount of $10,000, and released the deed of trust.

On May 24, 1930, the respondent assessed taxes, penalties and interest for the years 1917 to 1921, inclusive, against Charles Troll in the total amount of $9,119.87.

On June 23, 1930, the collector of internal revenue issued five warrants for distraint against Charles Troll covering the taxes, penalties and interest for the years 1917 to 1921, inclusive. In these warrants for distraint there is provided a blank space for the name of the deputy collector assigned to serve the warrants. This space in each of the warrants is blank. The space for the return of the deputy collector is blank on each warrant. No returns were made upon any of the warrants. There is no statement, certificate, affidavit, report or return that no assets were found or that there

were no assets belonging to Charles Troll. Unsuccessful attempts were made to serve the warrants on Charles Troll for two or three weeks. A deputy collector finally served these warrants on Charles Troll in the collector's office after Troll had come to such office in answer to a so-called " 10-day letter."

On July 2, 1930, the deputy collector filed with the clerk of the United States District Court at St. Louis a notice of tax lien. On July 3, 1930, he filed a similar notice with the recorder of deeds at St. Louis. Each notice showed that the amount of tax assessed against Charles Troll was $15,000. At the time he filed these notices of tax lien the deputy collector made efforts to locate some assets, but was unsuccessful.

By letter dated November 13, 1931, the respondent proposed to assess against the petitioner, as transferee of the assets of Charles Troll, the deficiencies in tax, penalties, and interest assessed against Charles Troll as hereinabove set forth in the tabulation at the beginning of the opinion. The petitioner filed her petition with this Board on January 8, 1932, for the redetermination of her liability.

Upon the foregoing facts, which we find, we are called upon to determine the liability of petitioner as transferee. The burden of proof is upon the respondent to show that petitioner is liable as a transferee. Title IX of the Revenue Act of 1924, as amended by section 602 of the Revenue Act of 1928 [1]. This burden includes the burden of showing that the transfer of the assets to the transferee rendered the transferor insolvent, or that the transferor was insolvent at the time of the transfer. *Charles B. Behr*, 30 B. T. A. 1291, petition to review dismissed, *Commissioner* v. *Behr*, 74 Fed. (2d) 1011; *Willard H. Ashton*, 28 B. T. A. 582; *Florence McCall*, 26 B. T. A. 292; *Eliza J. Wray*, 24 B. T. A. 94; *American Feature Film Co.*, 24 B. T. A. 18; *Samuel Keller*, 21 B. T. A. 84, affd., *Commissioner* v. *Keller*, 59 Fed. (2d) 499; *Joseph A. Steinle, Administrator*, 19 B. T. A. 325; and *Phil Gleichman*, 17 B. T. A. 147. In *Florence McCall*, *supra*, we stated in part:

> We have held that the statute places a *real burden* of proof on the respondent and that he must establish the liability of the transferee against whom he proposes to proceed. *Eliza J. Wray*, 24 B. T. A. 94; *Annie Temoyan et al.*, 16 B. T. A. 923. * * *
>
> It has been held that before proceedings may be brought against a transferee it must appear that the remedies against the transferor *would be of no avail*. *Swan and Cattle Co.* v. *Frank*, 148 U. S. 603; *Phil Gleichman*, 17 B. T. A. 147. * * * [Emphasis supplied.]

In *American Feature Film Co.*, *supra*, we stated in part, " but these facts do not prove insolvency *immediately* after the alleged distribution." (Emphasis supplied.)

---

[1] SEC. 912. In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

In the instant proceeding the proof does not show that Charles Troll was insolvent at the time of the transfers in question, which was March 1, 1930, or that he was rendered insolvent by such transfers to the petitioner. The only evidence as to Charles Troll's financial condition at March 1, 1930, is the evidence that he was without funds at that time and hence did not have cash to pay the petitioner the balance of $608.56, which was due her. However, this falls far short of proving that he was insolvent at that time. The word " funds " is defined in Webster's New International Dictionary, 1929 Ed., as " money and negotiable paper immediately or readily convertible into cash." Furthermore, the evidence shows that at the time of the transfers Charles Troll had at least one other asset, namely, the deed of trust for $3,000 which he authorized Harry Troll to collect in order to pay the petitioner the cash balance of $608.56 which was due her. There is no evidence upon which we can make a finding that on March 1, 1930, or at any other date, he had no assets aside from this deed of trust and the property transferred on March 1, 1930.

It may be further pointed out that we have no evidence to show that Charles Troll had any liabilities at the time of the transfers on March 1, 1930, other than his liability to the petitioner and his liability to the Federal Government for taxes, penalties, and interest.

Richard Wunsch, deputy collector, testified that at the time he filed the notices of tax lien on July 2 and 3, 1930, he made efforts to locate some assets of Charles Troll, but that he was unsuccessful. It is to be noted that the testimony of this witness is not directed toward proving what assets or liabilities Charles Troll had at the date in question, the controlling date, March 1, 1930, but to dates more than four months later, and therefore, it is not sufficient to prove insolvency on March 1, 1930, the date of the transfers in question here. Even when considered as having some bearing upon the financial condition of Charles Troll at March 1, 1930, it is insufficient to establish that Charles Troll was insolvent at the date in question. He did not testify in detail as to the efforts he made to locate assets of the transferor and we can not, in the exercise of our independent judgment, determine from his testimony that Charles Troll did not have other assets or was insolvent. It is significant that he did not return any warrant of distraint *nulla bona* or make any return whatsoever upon any warrant of distraint in the form provided thereon for the purpose or in any other form. The form of return and accompanying instructions provided on each such warrant required a thorough search and a full report, in the form of a certificate, of the result over the signature of the deputy collector supported by his affidavit in the event of a " report of no property found liable to distraint." His conduct is open to the inference that he was not in a position as a matter of fact to make

such return. For all we know from the evidence adduced, Charles Troll may have had other assets on March 1, 1930, of a value sufficient to cover all of his liabilities.

It is also important to note that the space on the reverse side provided for the return of the deputy collector in each of the warrants for distraint against Charles Troll is wholly blank, there being no return made as to any of the warrants; and we are therefore not called upon to decide, and do not decide, whether such returns, if they had properly shown that no assets could be found, would have been favored with a presumption of correctness as to the financial condition of the transferor as of the date of the transfers or otherwise.

This proceeding is not governed by *John Thomson, Jr.*, 20 B. T. A. 1, petition to review dismissed by the United States Circuit Court of Appeals for the Third Circuit on February 8, 1932; *B. F. Fairless*, 19 B. T. A. 304; affd., *Fairless* v. *Commissioner*, 67 Fed. (2d) 475; *Hatch* v. *Morosco Holding Co.*, 50 Fed. (2d) 138; certiorari denied, 284 U. S. 668, or other similar cases wherein the courts or this Board were satisfied from the evidence that the transferor was insolvent and that the Commissioner had met his burden of proof. It may not be amiss to point out that in *Hatch* v. *Morosco Holding Co.*, *supra*, the court stated:

Ordinarily a creditor must proceed to judgment against his debtor and have an execution returned nulla bona before he can pursue third persons on his claim. [Citing cases.] * * * But, where the debt is admitted [citing cases], and it is apparent that a judgment and execution against the debtor would be futile [citing authority] the procedural requirement may be dispensed with. * * *

Here it is not apparent that Charles Troll was insolvent, and that it would have been futile to proceed against him; and we must hold that respondent has not met the burden of proof in this respect.

It may be pointed out that no legal lien attached to the property of Charles Troll which he transferred to the petitioner, by virtue of section 3186 of the Revised Statutes (sec. 613, Revenue Act of 1928 [2]),

---

[2] SEC. 613. LIEN FOR TAXES.

(a) Section 3186 of the Revised Statutes, as amended, is amended to read as follows:

"SEC. 3186. (a) If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.

"(b) Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

\*          \*          \*          \*          \*          \*          \*

since the earliest date under such section that such a lien might arise was the date the assessment list was received by the collector. Here the property in question was transferred on March 1, 1930, whereas assessment was not made by the respondent until May 24, 1930, and it was some time thereafter that the collector received notice. It was on July 2 and 3, 1930, that the collector filed notices of tax liens.

We have found as a fact that certain real estate transferred by Charles Troll to petitioner in partial satisfaction of the indebtedness under the accord and satisfaction agreement was transferred for a full and adequate consideration of $8,961.44.

We have also found the values of the properties transferred by Charles Troll to petitioner, which were not in satisfaction of the indebtedness under the accord and satisfaction agreement, and which, so far as the record shows, were transferred for a nominal consideration.

In arriving at all of these values which we have found we have taken into consideration all of the somewhat voluminous evidence bearing on the subject of values. In fixing and finding these values we attribute nothing to the declaration of trust executed February 28, 1930, since the fair market value of all of the property covered by it does not exceed $5,650 ($3,000+$1,000+$1,650), as fixed and found by us, and Edward Koeln, mentioned therein, under its terms, could not share in any profits on a sale of the real estate therein described until $4,500 with interest at 6 per cent from some time in 1922 to the date of such sale on or before 1950 was realized, and this principal amount of $4,500 with interest totaled at least $6,335 on the date of the transfer, March 1, 1930; and, hence, Koeln then had no claim on petitioner.

However, all these values which we have found as to the properties transferred for nominal considerations become of no consequence in view of our holding that respondent has not met the burden of proving that Charles Troll was insolvent at the time of the transfer, March 1, 1930.

In view of our holding upon the questions of insolvency, it becomes unnecessary to consider any of the other issues raised by the pleadings. It may be added, however, that we have found, as heretofore set forth, all the material facts which the whole record justifies.

> *Decision will be entered that there is no liability on the part of the petitioner for taxes, penalties, or interest owing from Charles Troll for the years 1917 to 1921, inclusive.*