**IRVINE v. HELVERING, Commissioner of Internal Revenue.**

No. 11152.

Circuit Court of Appeals, Eighth Circuit.

Nov. 3, 1938.

John L. Connolly, of St. Paul, Minn., for petitioner.

Paul S. McMahon, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals (36 B.T.A. 653) affirming a determination by the Commissioner that for the year 1929 there was a deficiency of $2,728.05 in income taxes of

C. G. Irvine (now deceased) for which Myrtle M. Irvine, his wife, as a transferee, was liable under Sec. 311 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 860, 26 U.S.C.A. § 311.[1]

The facts out of which this controversy arises are stipulated. A detailed statement of them would be more confusing than helpful. It is enough to say that, at the time of C. G. Irvine's death, May 14, 1932, there was personal property held by him and his wife as joint tenants, of the value of $34,527.03, consisting of corporate stocks of the value of $32,266.25, and bank account $2,260.50, and that the only property belonging to him individually was 25 shares of stock, worth $153.25, and a savings account of $30.28; that up to that time no deficiency in income taxes for the year 1929 had been assessed, the deficiency assessment being made on July 16, 1932, pursuant to a waiver executed by the taxpayer on February 16, 1932; that the Commissioner, being unable to collect this deficiency assessment from the estate of the deceased, assessed it against the petitioner as a transferee of his estate; that, from the determination of the Commissioner that she was liable for the tax, she appealed to the Board, denying her liability for her husband's unpaid income taxes for the year 1929 as a transferee within the meaning of Sec. 311.

The petitioner admits her liability for the deficiency to the extent of $183.53, the value of the property owned by her husband individually at the time of his death. As to the rest of the property, she contends that she is not a transferee within the meaning of Sec. 311, and that she acquired that property as a surviving joint tenant, free of all her husband's debts and obligations.

The respondent makes three contentions:

(1) That $7,600 worth of the stocks held in joint tenancy, which became the petitioner's upon her husband's death, were owned by him individually in 1929; that he transferred these shares to himself and wife as joint tenants, but that, since his interest in them was acquired when they were originally purchased and her interest was acquired by the subsequent transfer, the tenancy lacked unity of time and title, so that it was not a joint tenancy, but a tenancy in common; that, therefore, upon his death, C. G. Irvine owned an undivided one-half interest in these shares, which became a part of his estate and went to his wife as a distributee, and not as a surviving joint tenant.

(2) That, assuming the validity of the joint tenancies, the petitioner is, nevertheless, liable as a transferee under the trust fund doctrine, because these tenancies were created in 1929 and 1930, constituted transfers which were presumptively fraudulent, and resulted in rendering the estate of C. G. Irvine insolvent.

(3) That the enlargement of the petitioner's interest in the joint tenancies from an undivided one-half interest to the whole interest in the property by reason of the taxpayer's death, constituted a transfer to the petitioner of her husband's undivided interest in the property and made her a transferee within the meaning of Sec. 311.

We shall consider the respondent's contentions in their order.

1. Relative to the stocks which the respondent contends should not be regarded as being in joint tenancy at the time of Mr. Irvine's death, the respondent points out that such shares were acquired by Mr. Irvine individually through his brokers between September 11, 1929, and January 29, 1930; that until June 13, 1930, no transactions occurred with respect to these shares, except a change on the books of the brokers of Mr. Irvine's trading account to C. G. Irvine and Mrs. Myrtle M. Irvine as joint tenants; that on June 13, 1930, some of these shares were withdrawn from the

---

[1] § 311. Transferred assets.

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title [chapter].

*　*　*　*　*　*

"(f) Definition of 'transferee.' As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."

brokers, and when they were redeposited with the brokers on June 29, 1930, new certificates were procured in the name of "C. G. Irvine and Myrtle M. Irvine, as joint tenants"; that the other shares were, on June 29, 1930, held in the name of the brokers, but were, afterwards and prior to the death of Mr. Irvine, reissued in his name and that of his wife as joint tenants.

It is conceded that joint tenancies may, under the laws of Minnesota, which are here controlling, be created in personal property (Peterson v. Lake City Bank & Trust Co., 181 Minn. 128, 131, 231 N.W. 794), but it is asserted that, in order to have a valid joint tenancy in personal property, the tenants must have one and the same interest, created by one and the same conveyance, and originating at one and the same time, and that the property must be held in one and the same undivided possession; that, in other words, there must be present the four unities, those of interest, title, time, and possession. 14 Am. Jur. page 81, § 7; Peterson v. Lake City Bank & Trust Co., supra.

The respondent argues that, with respect to the creation of the joint tenancies in the shares of stock which originally stood in the name of Mr. Irvine alone, the unities of time and title were absent, for the reason that Mr. Irvine acquired his interest at the time the stocks were originally purchased by him, while the petitioner acquired her interest either at the time the brokers' account was changed to a joint account or at the time the stock certificates were reissued to the petitioner and her husband, as joint tenants. This argument finds support in Breitenbach v. Schoen, 183 Wis. 589, 198 N.W. 622, which dealt with an alleged joint tenancy of stock owned originally by a mother who had endorsed upon the stock certificates an assignment to herself and her son as joint tenants, thereafter delivering the certificates to a third person for safe keeping. The court held that this did not create a joint tenancy, saying (page 623 of 198 N.W.): "Manifestly, the deceased could not convey an interest in the certificates to herself, and it is quite clear that she did not intend to convey the entire interest in the certificates to her son. Not being able to make a conveyance to herself, there was neither unity of title nor unity of time, and under such circumstances a tenancy in common was created rather than a joint tenancy. There

was therefore no right of survivorship as to the four certificates assigned. * * *"

Deslauriers v. Senesac, 331 Ill. 437, 163 N.E. 327, 62 A.L.R. 511, also supports this argument. There a husband and wife executed a deed of the wife's land to themselves as joint tenants. It was held that this did not create a joint tenancy, although that was the intent, since the wife could not convey to herself an interest in land which she owned, and that unity of time and title were absent, and, for that reason, a tenancy in common, and not a joint tenancy, was created.

The Minnesota case most closely analogous to this is Peterson v. Lake City Bank & Trust Co., supra, 181 Minn. 128, 231 N. W. 794, which related to a joint tenancy in corporate bonds. A Mr. and Mrs. Peterson jointly owned stock. Together they ordered $8,000 of bearer bonds from an investment house, and applied their stock in part payment. Mr. Peterson, in the presence of Mrs. Peterson, suggested to the bond salesman that the bonds be held in joint tenancy. The salesman endorsed upon the order for the bonds, "To be issued in joint tenancy." The bonds, when delivered were payable to bearer, but were in an envelope upon which was written, "Property of John Peterson and—or Mrs. Nina R. Peterson as joint tenants, not as tenants in common, with right of survivorship." The invoice evidencing the sale of the bonds recited that it was made to Mr. and Mrs. Peterson, "as joint tenants, not as tenants in common, with right of survivor ship." Later Mr. and Mrs. Peterson made a similar purchase of $3,000 of bonds, and directed that they be issued in the same way. The envelope in which the latter bonds were delivered bore the same notation as that in which the $8,000 of bonds were delivered. All of the bonds were kept in a "safety box" to which both husband and wife had access. The court said (pages 130, 131 of 181 Minn., 231 N.W. page 795): "The fact that the two persons did not make equal contribution, if they in truth did not, to the purchase price is not important."

And further said:

"By the transaction Mr. and Mrs. Peterson acquired the same interest in the bonds, such interest accrued in the single transaction, the interest of each commenced at the same time, and the property was received and held by one and the same un-

divided possession. The right of survivorship was present. The presence of such elements constitutes a joint tenancy. From the viewpoint of a layman the right of survivorship is the principal characteristic of a joint tenancy. That is what made a joint tenancy attractive to the parties to this transaction. That was the goal which they mutually sought.

"A joint tenancy may exist in personal property and it may be established by parol, though here there is supporting documentary, evidence."

█ The respondent argues that, because the Supreme Court of Minnesota pointed out that the four unities were present in the Peterson Case and that "the presence of such elements constitutes a joint tenancy," it would hold, with respect to the joint tenancies here in question, that the four unities were not present, and that the absence of the unities of time and title would render invalid these joint tenancies. This, we think, does not follow. It is our opinion that the Supreme Court of Minnesota would rule that when C. G. Irvine procured the stock certificates to be issued to himself and Mrs. Irvine as joint tenants with right of survivorship, he sufficiently satisfied the requirements of the four unities, since the certificates evidenced the creation of the joint tenancies and the intent that the right of survivorship should exist. From our examination of Minnesota cases which bear upon the question, we gather that the most important element of a joint tenancy, in personal property at least, is the intent of the creators that the right of survivorship shall exist. McLeod v. Hennepin County Savings Bank, 145 Minn. 299, 176 N.W. 987; Kemp v. Holz, 149 Minn. 237, 183 N.W. 287; Dyste v. Farmers & Mechanics Savings Bank, 179 Minn. 430, 229 N.W. 865; Zigan v. LeBlanc, 191 Minn. 538, 254 N.W. 810; Forney v. Farmers' Mutual Fire Ins. Co., 181 Minn. 8, 231 N.W. 401. In the last case referred to, the court said (page 10 of 181 Minn., 231 N.W. page 402): "We need not decide whether Mr. and Mrs. Forney were technically joint tenants under the language of the deed. It is plain that the element of survivorship was present, and that it was the intention of the parties that the survivor was to own the land in fee. Such is the language of the deed. It follows that upon the death of Mr. Forney no title to land passed to his heirs. The language of the deed put the title in Mrs. Forney, and she became the sole owner in fee."

In Edmonds v. Commissioner, 9 Cir., 90 F.2d 14, certiorari denied 302 U.S. 713, 58 S.Ct. 32, 82 L.Ed. 551, it was said (page 16):

"Petitioner argues that a person cannot convey title to himself, because he is unable to make delivery to himself; that if a person conveys property to himself and another as joint tenants, what he has done is to convey an undivided half interest; that since the grantor and grantee acquire their respective interests at different times, and that of the grantor, when acquired, was not the same as that which the grantee acquired, there is neither unity of title, nor unity of time, and therefore no joint tenancy. This technical view is followed in Breitenbach v. Schoen, 183 Wis. 589, 198 N.W. 622, and in Deslauriers v. Senesac, 331 Ill. 437, 163 N.E. 327, 62 A.L.R. 511.

"However, the weight of authority is opposed to that view. Ames v. Chandler, 265 Mass. 428, 164 N.E. 616; In re Klatzl's Estate, 216 N.Y. 83, 110 N.E. 181, 182; Colson v. Baker, 42 Misc. 407, 87 N.Y.S. 238; Saxon v. Saxon, 46 Misc. 202, 93 N.Y.S. 191; In re Horler's Estate, 180 App. Div. 608, 168 N.Y.S. 221; Lawton v. Lawton, 48 R.I. 134, 136 A. 241; Brent's Case, 3 Dyer 340a, 73 Eng.Rep. 766. We believe the technical view should give way to the intention of the parties, and hold that a joint tenancy may be created by conveyance from one to himself and another, as joint tenants."

While the exact question is, perhaps, still open in Minnesota, we believe that the Supreme Court of that State would follow the weight of authority, rather than adopt the technical view contended for by the respondent. We are of the opinion that the joint tenancies here in question were valid.

█ 2. The second contention of the respondent finds no evidentiary support in the record. The record conclusively shows that C. G. Irvine was at all times solvent, that the creation of the joint tenancies did not make him insolvent, and that he could not have had any intent to hinder, delay or defraud his creditors. In fact, the record fails to show that, during his lifetime, C. G. Irvine had any debts of which he was aware. He was free to dispose of his property in any way that he saw fit. McDonald

v. Williams, 174 U.S. 397, 400, 401, 404, 19 S.Ct. 743, 43 L.Ed. 1022. The burden of establishing that the creation of these joint tenancies rendered C. G. Irvine insolvent, or that the transfers were made with intent to defraud his creditors, so that the petitioner, upon his death, became a transferee and liable for his unpaid income taxes, was upon the Commissioner. Sec. 602 of the Revenue Act of 1928, 45 Stat. 873, 26 U.S. C. § 619, 26 U.S.C.A. § 619. Troll v. Commissioner, 33 B.T.A. 598. Sections 8478 and 8481 of Mason's Minnesota Statutes 1927, are clearly inapplicable, there being no evidence of either fraud or insolvency.

■ 3. Sec. 311 of the Revenue Act of 1928, 26 U.S.C.A. § 311, does not create the liability of a transferee, but provides the Government with a new remedy for enforcing an existing "liability, at law or in equity." Phillips v. Commissioner, 283 U.S. 589, 594, 51 S.Ct. 608, 610, 75 L.Ed. 1289; Hulburd v. Commissioner, 296 U.S. 300, 303, 56 S.Ct. 197, 199, 80 L.Ed. 242; Phillips-Jones Corporation v. Parmley, 302 U.S. 233, 235–237, 58 S.Ct. 197, 198, 199, 82 L.Ed. 221; Liquidators of Exchange Nat. Bank v. United States, 5 Cir., 65 F.2d 316; Hatch v. Morosco Holding Co., Inc., 2 Cir., 50 F.2d 138, 139; Suisman & Blumenthal, Inc., v. Eaton, D.C., 4 F.Supp. 763, 765, affirmed 2 Cir., 74 F.2d 716; Wire Wheel Corporation of America v. Commissioner, 16 B.T.A. 737, affirmed 2 Cir., 46 F.2d 1013; Fostoria Milling & Grain Co. v. Commissioner, 11 B.T.A. 1401.

■ In Liquidators of Exchange Nat. Bank v. United States, supra, 5 Cir., 65 F. 2d 316, the court said with reference to Sec. 311: "This section 'provides the United States with a new remedy for enforcing the existing "liability, at law or in equity"' of a transferee. Phillips v. Com'r, 283 U. S. [589], 594, 51 S.Ct. 608, 610, 75 L.Ed. 1289. It does not create or impose an obligation not already fixed by municipal law. It merely provides a summary remedy for its direct enforcement. Phillips v. Com'r, supra; Hatch v. Morosco Holding Co. (C. C.A.) 50 F.2d 138. In short, the act is procedural only, operating to put in the place of the taxpayer a transferee of his who has received money or property under circumstances making the transfer void or voidable as to creditors."

What this means in the case at bar is that, if the petitioner received from her husband, at his death, property which was legally chargeable with his debts, the Com-

missioner could rightfully assess a deficiency in the income taxes of her husband against her as a transferee of his property. But the property which the respondent seeks to subject to the payment of the deficiency in income taxes of C. G. Irvine was not acquired by the petitioner through his death, but as a surviving joint tenant under tenancies created prior to his death.

■ The rule is that a surviving joint tenant becomes the absolute owner of the property held in joint tenancy, upon the death of the cotenant, free of the claims of the heirs or creditors of the deceased. 14 Am.Jur. page 80; Musa v. Segelke & Kohlhaus Co., 224 Wis. 432, 272 N.W. 657, 111 A.L.R. 168; Wood v. Logue, 167 Iowa 436, 149 N.W. 613, 615, Ann.Cas.1917B, 116; In re Peterson's Estate, 182 Wash. 29, 45 P. 2d 45. That this is the rule in Minnesota is clear from the Minnesota cases already cited. The estate of a deceased joint tenant takes nothing, his heirs take nothing, and his creditors take nothing; the surviving joint tenant takes everything.

The conclusion which was reached by the Board of Tax Appeals in this case is opposed to its decision in Smith v. Commissioner, 24 B.T.A. 807. That case involved the transferee liability of a surviving tenant by the entirety. On page 812, the Board said: "We think that the correct rule is that while property so held is subject to the debts of either spouse, the survivor takes the property unencumbered by debts of the deceased. The right of survivorship takes precedence over claims against decedent. At common law an estate by the entirety is during coverture subject to sale on execution against the husband, but such a sale can not affect or deny the seisin or use of the wife in the estate, and if she survives her husband the whole estate goes to her."

The Board reached the conclusion in that case that the surviving tenant was not a transferee of the decedent.

Survivorship is a characteristic of both a tenancy by the entirety and a joint tenancy, United States v. Robertson, 7 Cir., 183 F. 711, 714, and the law is that a surviving tenant of either a joint tenancy or a tenancy by the entirety becomes the absolute owner of the estate free from the claims of the heirs or creditors of the deceased cotenant. It is unimportant, so far as this case is concerned, in what other respects such tenancies differ. But see United States v. Robertson, supra, and Tyler v.

United. States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758. The cases of Tyler v. United States, supra, Phillips v. Dime Trust & Safe Deposit Co., 284 U.S. 160, 52 S.Ct. 46, 76 L.Ed. 220, and Gwinn v. Commissioner, 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270, are of no assistance in determining the question here presented. Those cases dealt with the power of Congress to require the inclusion in gross estate, for the purpose of the estate tax, of the interest of a decedent in property held in joint tenancy or in tenancy by the entirety. The court reached the conclusion that, since the death of a cotenant becomes "the generating source of definite accessions to the survivor's property rights," Gwinn v. Commissioner, 287 U.S. 224, 229, 53 S.Ct. 157, 159, 77 L.Ed. 270, Congress was justified in enacting the legislation which was challenged in those cases. The question of the transferee liability of a surviving joint tenant for the unpaid income taxes of a deceased joint tenant was not touched upon. If, in enacting Sec. 311, Congress had sought to make the interest of a decedent in property held in joint tenancy liable for unpaid taxes due the Government, an entirely different question would be presented, upon which the cases referred to might have a bearing.

The order of the Board, in so far as it imposes liability upon the petitioner in excess of $183.53 for the unpaid income taxes of her husband for the year 1929, is erroneous and is therefore reversed.